FIRST NATIONAL BANK OF ROCHESTER, *vs.* FREDERICK M.
PIERSON.

### September 21, 1877.

National Banks—Power to Deal in Promissory Notes.—Under the congressional
act, authorizing the creation of national banks, those associations pos-
sess no power to deal and speculate in promissory notes as choses in ac-
tion, for purposes of private gain and profit alone, or to acquire any title
thereto by purchase, other than in the way of discount.

Appeal by plaintiff from a judgment of the district court
for Olmsted county, in an action tried by *Mitchell, J.,* without
a jury, upon a promissory note made by defendant, and
indorsed by one John Butler.

*Jones & Gove,* for appellant.

*Chas. C. Willson,* for respondent.

CORNELL, J.   It is expressly found as a fact by the district
court, before whom this cause was tried without a jury, "that
the transaction under which the plaintiff claimed to have
acquired the note in question was a purchase, and not a dis-
count, or lending of money on the credit of it;" and we have
no hesitation in saying that, upon the evidence, we fully con-
cur with the court that such was undoubtedly the real nature
of the transaction as intended by the parties thereto.   As a
conclusion of law from this finding the court held "that the
plaintiff, a national bank corporation, had no authority to
purchase or traffic in promissory notes as choses in action,
and did not in law acquire, by the supposed purchase, any
title to the note in question, and cannot recover upon it in
this action."

Upon the fact, as thus found, it will be seen that the only
question presented is whether a national bank, created and
organized under the act of congress "to provide a national
currency," etc., is authorized to deal or traffic in promissory
notes as a species of personal property, or to acquire any

title to such paper by a purchase made admittedly not in the way of discount, or by lending money on the credit of it.

In the case of the *Farmers' & Mechanics' Bank* v. *Baldwin,* 23 Minn. 198, it was expressly held that no power of this character is conferred by a law of this state, which authorizes state banks, organized under its provisions, "to carry on the business of banking by discounting bills, notes, and other evidences of debt, by receiving deposits, by buying and selling gold and silver bullion, foreign coin, and foreign and inland bills of exchange, by loaning money on real and personal securities, and by exercising such incidental powers as may be necessary to carry on such business," and that a purchase of such paper, made not in the way of discount, was *ultra vires,* as outside the legitimate scope and purposes of such institutions.

Under the congressional enactment the authority which is given is "to exercise all such incidental powers as shall be necessary to carry on the business of banking, by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt, by receiving deposits, by buying and selling exchange, coin and bullion, by loaning money on personal security, and by obtaining, issuing and circulating notes according to the provisions of said title."   U. S. Rev. St. § 5136.

This is substantially like the state statute which was under consideration in the *Farmers' & Mechanics' Bank* v. *Baldwin, supra.*   The word "negotiating," as used in this section, and likewise in section 29 of the same statute, is used in its ordinary and appropriate transitive sense to indicate, not an act of purchase, but one of transfer, whereby the negotiated paper is passed from the holder or owner and put into circulation. Hence the incidental power to negotiate notes to the extent necessary to carry on the business of banking, simply implies an authority to realize upon such commercial paper as the bank may receive in the lawful conduct of its business, by negotiating, selling and transferring it by means of a re-dis-

count obtained, or otherwise. It gives no implied authority to speculate or traffic in paper of the character of the note in question, or in financial securities of any description. Morse on Banking, 4 and 5. The powers, therefore, which are conferred by this section, in respect to the acquisition of commercial or business paper, are in no way affected or enlarged by the use of the term "negotiating." In the absence of any authoritative exposition of the federal statute in this regard, the principle settled in the *Farmers' & Mechanics' Bank* v. *Baldwin* must be regarded as decisive of the present case.

It is suggested by counsel for appellant that upon the evidence this case is distinguishable from that of the *Farmers' & Mechanics' Bank* v. *Baldwin*, in that the note sued on here was indorsed by Butler, the holder, at the time of the transfer to the plaintiff. This fact is undoubtedly a distinguishing though not conclusive test of the character of the transaction, and ordinarily raises a strong presumption denoting the existence of the relation of lender and borrower between the bank and the party so making the transfer, and thereby indicates that the parties really intended a loan of money upon the credit of the paper so indorsed; and we have no doubt, when such is the intention, "a borrower may," as was held in *Smith* v. *Exchange Bank of Pittsburgh*,[*] cited by appellant, "obtain the discount by a bank of the existing notes and bills of others, of which he is the holder, as well as of his own paper made directly to the bank," and that the bank will thereby acquire a valid title to such paper, because it makes the purchase by discount, or through the exercise of its discounting powers. But where the acts of the parties and the circumstances surrounding the transaction clearly rebut any presumption arising from the indorsment, and indisputably indicate the real nature of the transaction intended by the parties to be, in the language of the court below, "an out-and-out purchase of the note, and not discounting it or lending money on the credit of it," the mere fact of indorsement is not suffi-

[*] 3 Central Law Journal, 623.

cient to warrant the court in treating the transaction as something different from what was intended.

We fully concur with the court below in its conclusion as to the character of the transaction in this case. It was an ordinary case of note-shaving, pure and simple, for purposes of gain alone, outside the circle of any legitimate banking business, and foreign to any purpose for which those institutions are established. No loan was made or intended, nor was there any discount, in the ordinary and legal acceptation of that term, as applied to the business of banking. Judgment affirmed.