## FIRST NATIONAL BANK OF PIERRE v. SMITH *et al.*

1. Want of authority in a national bank to purchase a negotiable note cannot be used by the maker of the note as a defense in an action upon it.

2. Evidence examined, and *held* to show without conflict the plaintiff bank an indorsee for value.

(Syllabus by the Court. Opinion filed Nov. 9, 1895.)

Appeal from circuit court, Edmunds county. Hon. LORING E. GAFFY, Judge.

Action on promissory note. Judgment for plaintiff. Defendants appeal. Affirmed.

The facts are stated in the opinion.

*C. H. Barron* and *Albert Gunderson*, for appellants.

A national bank cannot become the owner of commercial paper by purchase. Farmers v. Baldwin, 23 Minn. 198; First v. Pierson, 24 *Id.* 140; Lazear v. Bank, 52 Md. 78; Wechler v. Bank, 42 Md. 591. The mere discounting of paper and placing the amount thereof to the credit of a depositor, who already has a large balance to his credit, does not make the bank a pur-

chaser for value. Mann v. Second, 1 Pac. 579; Bank v. Valentine, 18 Hun. 417; Bank v. Bank, 1 Hill 619; Hubbard v. Chapin, 2 Allen 328; Stevens v. Bank, 3 Hun. 147; Holcomb v. Wyckoff 35 N. J. L. 36; Bank v. Chapin, 8 Metc. 40; Ballock v. Frelinghoysen, 15 Fed. 675. To entitle a purchaser to the protection of equity as against the legal title or a prior equity, he must be a purchaser for a valuable consideration actually paid. Webster v. Howe, 8 Alt. 482; Weaver v. Broden, 49 N. J. 286; Farrington v. Bank, 24 Barb. 554.

*Horner & Stewart,* for respondent.

*Ultra vires* is not a defense to a suit by a national bank on a note purchased by it. Bank v. Hanson, 33 Minn. 40; 1 Morse on Banking, § 72. Giving of a credit by a purchasing bank for commercial paper is a parting with value. Benton v. Bank 26 S. W. 975; Brooklyn v. Bank, 102 U. S. 66.

KELLAM, J. This was an action by respondent against appellants upon a negotiable promissory note made by them to DeLaney Bros. The note was dated September 17, 1892, and became due November 17, 1893. On the 22d day of September, 1892, the payees indorsed the note, ''without recourse'' to the respondent bank. The appellants answered both a general denial and an affirmative defense, based upon a breach of warranty of the property for which the note was given. At the close of the evidence, the court directed a verdict for the respondent, and this appeal is from a judgment entered upon such verdict.

All the assignments of error are subordinate to two general propositions maintained by appellants: First. That a national bank cannot become the owner of commercial paper by purchase; that the attempted purchase is *ultra vires* and void, and consequently gives it no title or ownership upon which it can maintain an action. Appellants cite a number of cases which would sustain their contention. See Bank v. Baldwin, 23 Minn. 198; Bank v. Pierson, 24 Minn. 140; Lazear v. Bank,

52 Md. 78. But the later and more authoritative adjudications of the United States supreme court rule the question otherwise; that is, they hold that the want of authority by the bank to so acquire such paper can only be taken advantage of by the United States, and cannot be used by the maker as a defense to an action by the bank upon the same. See Bank v. Matthews, 98 U. S. 621; Bank v. Whitney, 103 U. S. 99. The supreme court of Minnesota subsequently recognized the controlling force of these decisions, and in Bank v. Hanson, 33 Minn. 40, 21 N. W. 849 held that "the plea of *ultra vires* is not available to defeat a recovery by a national bank upon negotiable paper purchased by it"; overruling Bank v. Pierson, 24 Minn. 140. The same question was before the supreme judicial court of Massachusetts in Bank v. Butler, 157 Mass. 548, 32 N. E. 909; and it was there held that, even if such purchase by the bank were unlawful, the violation of the law could only be availed of in a proceeding against the bank in the interest of the public to deprive it of its charter, but could not be used by the maker of the note as a defense in an action upon it. See, also, 16 Am. & Eng. Enc. Law, p. 167, and cases cited to support the text that "the plea of *ultra vires* is not available to defeat a recovery by a national bank upon negotiable paper purchased by it, even though the bank acquired such paper, not as security, but as its absolute property."

It is next contended by appellants that the court erred in directing a verdict for plaintiff on the theory, as announced by the court, that "the evidence also shows that it [the note] was transferred to an innocent holder for value before maturity; that the defense attempted to be offered by defendants is not good under the law." The note was made to DeLaney Bros., and by them indorsed to the respondent bank. The presumption is that it was indorsed for a valuable consideration, and in the ordinary course of business. Comp. Laws, Sec. 4470. Appellants' contention is that its transfer for a valuable consideration was denied by the answer, and. at least left in so

much doubt by the evidence as to prohibit the court from treating it as a fact conclusively proved. More particularly stated, his claim is that the evidence shows that, upon the transfer of the note, the DeLaneys simply received credit for the amount on the books of the bank, and that it nowhere appears that the amount so credited, or any part of it, was ever paid over to them, so that the bank never really parted with or paid anything for the note. But the evidence does not seem to be consistent with this theory.

It is true DeLaney says that he got "either money or a credit for this amount"; and again: "I do not know as I received the money. If I didn't I received a credit." This is negative, and proves nothing either way as to the receipt of money. He further stated in answer to the question: "For what was this note given to the bank?" "It was given for money." Question: "How much money?" Answer: "$1,000." Mr. Cummins, the cashier testified: "They got credit for the amount of the note." He was asked "whether or not there was any money paid there at that time," and answered, positively: "There was." With this positive answer to the distinct and positive question of fact, with nothing militating against it, the trial court was justified in accepting the fact as proved. The most that can be said for DeLaney's testimony is that he was not certain whether he received money or a credit, and it is not at all inconsistent with the cashier's positive statement that money was actually paid at the time. The cashier also testifies that the DeLaneys "got credit for the amount of the note." It appears that the DeLaneys had at the time a current account with the bank, and it certainly would not be an unusual transaction in banking for the bank to credit the account with the amount of the note, and charge the account with whatever money was paid, thus putting the whole transaction on the books of the bank; and this seems to be just what was done, by the testimony of both witnesses. It is true that it does not appear what amount of money was paid at the time, unless the testi-

mony of DeLaney, already noticed, means that the amount so paid was $1,000. But, assuming that his testimony does not necessarily so mean, it must be remembered that the presumption was that respondent paid value, so that it devolved upon appellants to show that it did not. Until respondent introduced some evidence tending to show that the transfer was not for value, appellants might have safely rested upon the presumption. As already indicated, the testimony, as a whole, does probably show, or at least tend to show, that the DeLaneys received credit on the books of the bank for the amount of the note; but it does not show, or tend to show, that they did not at the same time receive money charged against such credit, while Cummins' testimony is positive that they did. To overcome the presumption raised by the law, it was still incumbent upon the appellants to show that the amount so paid was so inadequate as to cast suspicion on the *bona fides* of the transaction and there was no attempt to do so.

Upon the evidence brought up by this record, the jury could not have found that the bank did not part with value for this note; or that the amount of money so paid was so inadequate as to raise a suspicion of bad faith; for, as to the first proposition, the undisputed evidence was pointedly the other way, and, as to the second, there was no evidence touching such question. Under these conditions, the trial court properly held that the respondent bank was a *bona fide* holder for value, and this necessarily shut out affirmative defense. The judgment is affirmed.