SECURITY STATE BANK OF WISHEK,
Plaintiff and Respondent,

v.

STATE of North Dakota, doing business as
the Bank of North Dakota, Defend-
ant and Appellant.

Civ. No. 8663.

Supreme Court of North Dakota.

Oct. 30, 1970.

Rehearing Denied Dec. 4, 1970.

Helgi Johanneson, Atty. Gen., and Robert A. Birdzell, Special Asst. Atty. Gen., Bismarck, for defendant and appellant.

Vogel, Bair & Brown, Mandan, for plaintiff and respondent.

ERICKSTAD, Judge.

The State of North Dakota, doing business as the Bank of North Dakota, as defendant in this action, appeals to this court from a judgment of the district court of Burleigh County entered May 29, 1970, in favor of the plaintiffs, Security State Bank of Wishek, a domestic banking corporation, and Walter R. Sayler, in the sum of $89,401.80. The State demands a trial de novo in this court.

This litigation arises out of the sale by the Bank of North Dakota to the Security State Bank of Wishek of Cass County Industrial Development Revenue Bonds for $80,000 (the face value of the bonds), plus interest which had accrued on those bonds at the rate of 5 percent per annum from February 1, 1967, to December 22, 1967, in the sum of $3,566.67. The coupons maturing on February 1, 1968, and August 1, 1968, were clipped and collected by the plaintiffs, and no problems arose over the sale until the Bank of North Dakota contacted Mr. Sayler, the president of the Bank of Wishek, by telephone in Arizona early in 1969, when it became apparent that the County was about to default in the payment of the principal and interest on some of its bonds, in an effort to secure the agreement of the Bank of Wishek to a so-called moratorium whereby all of the purchasers of the bonds were to agree to permit an extension of the maturity date of said bonds and to permit a deferment in the payment of interest thereon. It is Mr. Sayler's contention that it was on this occasion that he first learned that the bonds which his bank had pur-

chased were not general obligation bonds of the County and thus were not guaranteed by the County, and that on learning this he returned the very next day and made a demand of the Bank of North Dakota that it accept a return of all of the securities and that it refund to the Bank of Wishek the purchase price of the securities.

It is Mr. Sayler's further contention that when there was no compliance with this request, he brought this action to recover the entire purchase price of the bonds.

Mr. Sayler also asserts that it was the same date on which he conferred with the officials of the Bank of North Dakota, and made the demand above referred to, that he later visited with the State Bank Examiner, who informed him that the Bank of Wishek was in violation of Section 40–57–10, N.D.C.C., in that the stated capital of the Wishek bank was only $50,-000 and that it was thus prohibited from owning bonds of this type in excess of 5 percent of the stated capital, or $2,500 of such bonds.

Section 40–57–10 reads:

40–57–10. *Sale of revenue bonds.*— Revenue bonds shall be sold at not less than ninety-five percent of par plus any accrued interest. Such bonds may be sold at private sale, or such bonds may be sold at public sale after notice of such sale has been published once at least five days prior to such sale in a newspaper circulating in the municipality, and in at least two financial newspapers published in Chicago, Illinois, in New York, New York, in Minnesota, Minnesota, or in San Francisco, California. Banks chartered in this state may purchase the revenue bonds issued under the provisions of this chapter in an amount not to exceed five percent of their capital.

North Dakota Century Code.

The material allegations of the plaintiffs' complaint follow:

I

The plaintiff, Security State Bank of Wishek, is a domestic banking corporation, and this action is brought pursuant to the provisions of Section 6–09–27, NDCC.

II

Pursuant to the suggestion of the State Examiner of the State of North Dakota, the plaintiff, Security State Bank, requested from the Bank of North Dakota offers to sell municipal bonds in the approximate amount of One Hundred Thousand ($100,000.00) Dollars. In response to such solicitation, the Bank of North Dakota on December 8, 1967, in writing offered for sale certain "municipal securities", including Cass County Industrial Development Revenue Bonds of 1967. Pursuant to such offer, and pursuant to the express warranty of the Bank of North Dakota, that such bonds were municipal securities, the plaintiff, Security State Bank of Wishek, ordered and purchased Eighty Thousand ($80,000.00) Dollars face value of such bonds at par and accrued interest, and paid for same.

III

At the time of making such offer to sell, solicitation and sale, the Bank of North Dakota knew, or should have known (1) that such bonds were not municipal securities, in that they were not guaranteed as to payment of principal or interest by any municipality, and (2) that under the express provisions of Section 40–57–10, NDCC, North Dakota banks were not permitted to invest more than five (5) per cent of their capital in such securities, and that the plaintiff, Security State Bank, was therefore limited to an investment of Two Thousand Five Hundred ($2,500.00) Dollars in such securities.

IV

Upon subsequent examination by the State Examiner, such bonds, to the ex-

tent of Seventy-seven Thousand Five Hundred ($77,500.00) Dollars thereof, were disallowed as admissible assets of the plaintiff, Security State Bank, and Walter R. Sayler, the individual plaintiff herein, as majority stockholder of said bank, necessarily agreed to purchase or reimburse the bank for any loss on account of such purchase, to his damage.

## V

That such bonds are now in default as to the payment of interest.

## VI

That the defendant has been guilty of breach of contract, and of fraud and deceit and misrepresentation, upon which the plaintiffs justifiably relied to their detriment, and the plaintiffs hereby rescind their purchase of such bonds and offer to restore them to the defendant upon repayment of the sum paid therefor, with interest.

WHEREFORE, plaintiffs pray:

(1) That the transaction described herein be declared rescinded, null and void;

(2) That the defendant reimburse the plaintiffs for the cost of such bonds, with interest from the date of purchase;

(3) That the plaintiffs have their costs herein, and such other and further relief as to the Court seems just.

The State denied the material allegations of the complaint and in addition asserted affirmative defenses, the material parts of which read:

## I

That the defendant is an agency of the State of North Dakota created and existing under and by virtue of the laws of the State of North Dakota.

## II

That on or about the Fifth day of January, 1968, the defendant delivered to the plaintiff, Security State Bank of Wishek, at its special instance and request and in consideration of payment by it of the total sum of $83,566.67, exclusive of shipping charges, certain Cass County Industrial Development Revenue Bonds of 1967 in the aggregate face amount of $80,000.00, each and all of which bonds were dated as of February 1, 1967, and had theretofore been issued according to law by Cass County, a duly organized and existing political subdivision of the State of North Dakota, payable to bearer in fully negotiable form with bearer form negotiable interest coupons attached payable semiannually on the first days of February and August each year, which bonds carried endorsed on each thereof a "Trustee's Certificate of Authentication." That the said Cass County Industrial Development Revenue Bonds of 1967 were duly made and issued under the provisions of the constitution and laws of the State of North Dakota including the provisions of Chapter 40-57, NDCC, as amended, being the North Dakota Municipal Industrial Development Act. That all proceedings preliminary to the making and issuance of each of said bonds so delivered to the plaintiff Bank had been regularly supervised, examined, and approved by the written opinion of recognized bond attorneys as valid and binding special obligations of Cass County, North Dakota, enforceable in accordance with their terms payable from and secured by a first lien on and pledge of rentals of the Cass County Industrial Development Project. That the said bonds were shipped and delivered to the plaintiff Bank on its order in good faith without concealment, misrepresentation, deceit, or fraud.

## III

That subsequent to delivery of said Cass County Industrial Development

Revenue Bonds to the plaintiff Bank as hereinbefore alleged the same have come into default with respect to payment of interest thereon and the said bonds are no longer commercially negotiable and are therefore not returnable to the defendant. That the defendant would suffer substantial loss and damage if required to accept return of said bonds and to restore the consideration received therefore. That the plaintiffs, by reason of delay and lack of diligence have forfeited every right or claim they may have to be relieved of the consequences of their acceptance of said bonds and payment therefor.

WHEREFORE, the defendant asks judgment as follows:

1. That the action of the plaintiffs be in all things dismissed and that the defendant have judgment accordingly for its costs and disbursements.

2. That the defendant have such other and further relief as may be just.

The district court, as indicated by its memorandum opinion, relying on Jarski v. Farmers' and Merchants' State Bank of Hankinson, 53 N.D. 470, 206 N.W. 773 (1925) and on Smith v. Rennix, 52 N.D. 938, 204 N.W. 843 (1925), and upon the provisions of Section 40–57–10, N.D.C.C., required the State to accept return of bonds of $77,500 face value and to pay the face value of the same plus accrued interest which the Bank of Wishek had paid, plus other interest.

The State on appeal asserts that *Smith* and *Jarski* merely hold that the alleged rights of plaintiffs in those cases were unenforceable and the result was that the court left the parties where it found them. The State contends that this is the correct result where the underlying consensual fabric is void. The State asserts that it is doubtful that our Legislative Assembly had any intention to burden or discourage reasonable efforts to finance new industrial ventures in the state, and that public policy, as indicated in the Municipal Industrial Development Bond Act and in many other products of the legislative process, favors liberality in such financing. It argues that the prohibition, if any, in Section 40–57–10, N.D.C.C., as amended, is inferential, the language used being in the form of a grant of power as a corporate charter is a grant of power, and that any purchase in excess of and beyond the scope of such granted power is ultra vires rather than void.

In support of its position that the Wishek bank is entitled to recover nothing from the State in this case, notwithstanding the provisions of Section 40–57–10, N.D.C.C., the State refers us to the case of Anderson v. First National Bank of Grand Forks, 5 N.D. 451, 67 N.W. 821 (1896).

In *Anderson* this court in 1896, speaking through Judge Corliss, held a bank responsible for its acts as an agent, although the law prohibited it from functioning as an agent.

We quote the pertinent parts of that decision.

\* \* \* It is one thing to assert that a bank cannot legally engage in the business of acting as agent. It is an entirely different thing to assert that when it has in fact assumed to act as agent it shall not be held to the ordinary duties and obligations which govern such a relation. A bank may repudiate its promise to act as agent when such promise is not binding, and in so doing it will incur no liability. So long as the matter remains executory, it can fall back upon the defense of ultra vires. But a widely different question is presented when it has executed or pretended to execute the agency. So long as the business remains unfinished, the person dealing with the bank must take the risk of the refusal by the latter to proceed. He is bound to know that the act is ultra vires. But it is not a physical impossibility for a bank to act as agent. If it assumes to and does so act, and receives the proceeds of the sale,

it must account for them as agent. It has undoubtedly violated the law by exercising powers not conferred upon it. But this violation can be taken advantage of only by the sovereign authority which created the bank. [Prescott Nat. Bank of Lowell] v. Butler, 157 Mass. 548, 32 N.E. 909; [First Nat. Bank of Pierre] v. Smith [8 S.D. 7] 65 N.W. 437; [Merchants' Nat. Bank of St. Paul] v. Hanson [33 Minn. 40] 21 N.W. 849, 850; Hennessy v. City of St. Paul [54 Minn. 219] 55 N.W. 1123. Indeed, in many cases this is the rule, although the act performed by the bank is in defiance of a positive statutory prohibition. [National] Bank v. Matthews, 98 U.S. 621 [25 L.Ed. 188]; [National] Bank v. Whitney, 103 U.S. 99 [26 L.Ed. 443]; Thompson v. [St. Nicholas Nat.] Bank, 146 U.S. 240, 13 Sup.Ct. 66, [36 L.Ed. 956]; [Logan County Nat.] Bank v. Townsend, 139 U.S. 67, 11 Sup.Ct. 496 [35 L.Ed. 107]; [Walden Nat.] Bank v. Birch, 130 N.Y. 221, 29 N.E. 127.

It will be noticed that the authorities hold that the bank itself can enforce a contract or obligation or security although in securing the cause of action or security it exercised a power not conferred. * * *

\* \* \* \* \* \*
* * * A national bank cannot lawfully engage in the business of buying and selling merchandise, but if it in fact does buy merchandise it must pay for it. Yet in such a case it has exercised a power not vested in it. So if it does in fact act as agent it must act with fidelity, the same as all other agents, although in so acting it exercises a power not conferred upon it by the law. In neither case will the law allow it to plead its own want of power to absolve itself from the principles of common honesty. In both cases the sovereign can punish it by depriving it of its franchise as a corporation. * * *

Anderson v. First National Bank of Grand Forks, 5 N.D. 451, 67 N.W. 821, 823, 824 (1896).

The State points out that the result of the *Anderson* litigation after four appeals to the Supreme Court of North Dakota and the appeal in 172 U.S. 573, 19 S.Ct. 284, 43 L.Ed. 558, was that the bank was liable on its ultra vires transaction.

The U. S. Supreme Court in that case, relying on its earlier decision of Logan County Nat. Bank v. Townsend, 139 U.S. 67, 11 S.Ct. 496, 35 L.Ed. 107 (1891), said:

Here, the bank was found to have itself purchased notes which the owner had authorized it to sell to a third party, and, on general principles of law, it was held liable for their value as for a conversion, even though it was not within its power to sell them as the owner's agent.

We are of opinion that the supreme court of North Dakota committed no error in the disposition of any federal question, and its judgment is affirmed.

First National Bank of Grand Forks, N. D., v. Anderson, 172 U.S. 573, 19 S.Ct. 284, 285, 286, 43 L.Ed. 558 (1899).

■ We are persuaded by the argument of the State and accordingly conclude that neither the cases relied on by the trial court nor the provisions of Section 40–57–10, N.D.C.C., provide a basis for the plaintiffs' recovery from the State.

We must next inquire whether the plaintiffs have proved any other basis for recovery from the State of the purchase price of the bonds plus interest.

The respondents assert in their brief that the Cass County Industrial Development Revenue Bonds are not municipal securities and that therefore on the basis of breach of an express warranty that they were "municipal securities", or on the basis of misrepresentation, or on the basis of mutual or unilateral mistake, the contract

for the purchase of the securities is subject to rescission. The trial court was not convinced by this argument and accordingly required the plaintiffs to retain the bonds not in excess of 5 percent of the capital of the Bank of Wishek.

Mr. Sayler contends that as a result of the recommendation of one of the representatives of the State Examiner's Office that his bank could use about $120,000 in additional municipal bonds, he called the Bank of North Dakota and in speaking to Mr. Christie Bantz, the manager of the securities department of the bank, told him that the bank was interested in purchasing between $100,000 and $150,000 in municipal securities, and that he asked Mr. Bantz to send him a list from which a choice could be made.

Apparently in response to Mr. Sayler's telephone request, Mr. Bantz sent Mr. Sayler a letter on December 8, 1967, which commenced as follows:

Pursuant to our conversation of the other afternoon regarding your bank's purchase of from $150,000.00 to $200,000.00 of municipal securities, we hereby offer the following at par and accrued interest:

The letter then described Cass County Industrial Development Revenue Bonds of 1967, Hunter Refunding Improvement Bonds of 1959, Lehr Street Improvement District #2 Warrants, and Lignite Gas Utility Revenue Bonds.

Mr. Sayler asserts that on receipt of this letter, he again called the Bank of North Dakota, talked to Mr. Bantz, and purchased $80,000 worth of the Cass County Industrial Development Revenue Bonds and $21,000 worth of the Lehr Street Improvement Warrants. He instructed Mr. Bantz to "debit our account in his bank for the bonds."

By letter dated December 22, 1967, Mr. Bantz informed Mr. Sayler, as president of the Security State Bank of Wishek, as follows:

We have today effected the sale to you of $80,000.00 of Cass County Industrial Development Revenue Bonds and $21,-000.00 of Lehr Street Improvement District #2 Warrants as per the enclosed duplicate copy of debit slip to your account.

With your permission, we should like to wait until the middle of next week to order the securities out to your bank. Due to the Christmas rush of mail, we hesitate to have $101,000.00 of negotiable securities in transit.

Mr. Sayler testified that those bonds were delivered in early January 1968 to the Security State Bank of Wishek at Wishek, while Mr. Sayler was in Phoenix, Arizona, for his health, and that they were merely accepted by the cashier and placed in the vault of the bank where neither he nor any of the other officers of the bank examined them until the County defaulted in the interest payments.

The form of the bond is very illuminating. Had anyone on behalf of the Bank of Wishek examined the bonds he would have been struck immediately with the realization that the bonds were not general obligations of the County of Cass. The bonds are described in large letters as "Cass County Industrial Development Revenue Bond." The most pertinent part of the bond relative to this issue, however, is that paragraph which reads as follows:

This Bond is not a general obligation or debt on the general credit of the County, but is payable solely from revenues derived from the Project which has been leased to Lake Agassiz Sugar Corporation, Inc., a North Dakota corporation, for a rental at least sufficient to pay the principal of, interest on, and fees of the trustee and paying agent in connection with the bonds as the same become due and payable, and to accumulate and maintain a reserve for payment of the bonds. Rental payments sufficient for such purposes are to be paid by the lessee of the Project to the trustee

for the account of the County and deposited in a special account designated Cass County Industrial Development Revenue Bond Project No. 1 Fund, and have been duly pledged for that purpose. The bonds are also secured by a first mortgage on the Project acquired or constructed with the proceeds of the bonds.

The plaintiffs contend, however, that for a period of fifteen to eighteen years they had been buying bonds through the Bank of North Dakota and that in all instances they had purchased municipal bonds which were general obligations of the municipalities involved, and that accordingly they had a right to assume when the Bank of North Dakota described bonds as municipal bonds or municipal securities that these bonds or securities were guaranteed by the municipality and were therefore general obligations of the municipalities.

On the other hand, the State asserts that neither the Bank of Wishek nor its president, Mr. Sayler, had a right to assume that revenue bonds, and the bonds were clearly described as revenue bonds both in the letter to Mr. Sayler of December 8, 1967, and in the form of the bonds themselves, were guaranteed by the municipality.

It is regrettable that the Cass County Industrial Development Project, which had as its object the production of sugar from corn, failed, but this failure can in no way be resorted to as a justification for a rescission of the contract.

■ Section 40-57-03, N.D.C.C., provides for the powers of municipalities, and Subsection (2) thereof permits municipalities to issue revenue bonds such as the Cass County Industrial Development Revenue Bonds. The bonds were municipal securities under that statute, notwithstanding that they were not general obligations of the municipality.

■ It is difficult for us to believe that the president of the Bank of Wishek, with his many years of experience, did not know what he was buying; but in the event that he did not know what he was buying, we believe that his lack of knowledge resulted from his own negligence or carelessness in the purchase of these bonds, rather than from any misrepresentation or warranty on the part of the Bank of North Dakota.

Plaintiffs assert that they are entitled to a rescission of the contract under Section 9-09-02, N.D.C.C. They say that a unilateral mistake of fact is sufficient to justify rescission and in support thereof they refer us to Fedorenko v. Rudman, 71 N.W.2d 332 (N.D.1955) and Beatty v. Depue, 78 S.D. 395, 103 N.W.2d 187, 1 A.L.R. 3d 531 (1960).

Said section reads as follows:

*9-09-02. Rescission—When permitted.*—A party to a contract may rescind the same in the following cases only:

1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;

2. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part;

3. If such consideration becomes entirely void from any cause;

4. If such consideration before it is rendered to him fails in a material respect from any cause; or

5. By consent of all of the other parties.

North Dakota Century Code.

We find no basis in facts of this case for the application of Section 9-09-02, N.D.C.C.

We have also read the decisions above referred to and find in them no help to the plaintiffs in this case.

In *Fedorenko* this court in 1955, speaking through Judge Johnson, referring to Corpus Juris Secundum as authority, stated the rule that a unilateral mistake may entitle a party affected thereby to rescind the contract. It is interesting to note, however, that the court did not apply that rule to the plaintiffs' benefit, but actually denied the plaintiffs the right of rescission on the ground of waiver through unexcused delay.

In the instant case, if the plaintiffs are to recover on the basis of mistake, they must come within the provisions of Section 9–03–13, N.D.C.C., relating to mistakes of fact, or the provisions of Section 9–03–14, N.D.C.C., relating to mistakes of law.

*9–03–13. "Mistake of fact" defined.—* Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed.

*9–03–14. "Mistake of law" defined.—* Mistake of law constitutes a mistake within the meaning of this title only when it arises from:

1. A misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake as to the law; or

2. A misapprehension of the law by one party of which the others are aware at the time of contracting, but which they do not rectify.

North Dakota Century Code.

If it could be contended that the Bank of Wishek was mistaken in the type of securities that it purchased and that this mistake was a mistake of fact, we think that the bank is deprived of any recovery on the basis of a mistake of fact, for the reason that its mistake of fact was caused by its neglect of a legal duty to carefully ascertain the type of securities offered before it purchased them. The title of the bonds, which contained the word "revenue", should have alerted the plaintiffs to the type of bonds they were purchasing, and beyond the title of the bonds, the language of the bonds should have indicated that the bonds were not general obligation bonds of the County.

Even in *Beatty*, the case relied upon by the plaintiffs, the South Dakota court in construing a statute similar to ours said:

The requirement of SDC 10.0312 that a "Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake", has been interpreted to mean that it "must not result from the want of such care and diligence as would be exercised by a person of reasonable prudence under the same circumstances." Nilsson v. Krueger, supra [69 S.D. 312, 9 N.W.2d 783, 786]. Or as it is written in Grymes v. Sanders, 93 U.S. 55, 23 L.Ed. 798, "the party complaining must have exercised at least the degree of diligence which may be fairly expected from a reasonable person."

Beatty v. Depue, 78 S.D. 395, 103 N.W.2d 187, 191, 1 A.L.R.3d 531 (1960).

We do not believe that the plaintiffs exercised reasonable diligence in this case.

■ In a recent case our court, speaking through Judge Strutz, said:

The modern—and, we believe, the better—rule for rescission of a contract for mistake is set forth in 12 C.J.S. Cancel-

**234**

lation of Instruments § 27–b(3) page 980, where we read:

"The power to cancel for mistake should not be exercised against a party whose conduct has in no way contributed to or induced the mistake, and who will obtain no unconscionable advantage thereby."

The same rule is found in 13 Am.Jur. 2d Cancellation of Instruments, Section 32, page 524, where the writer says:

" * * * but cancellation should not be decreed against a party whose conduct did not contribute to or induce the mistake and who will obtain no unconscionable advantage therefrom."

Dvorak v. Kuhn, 175 N.W.2d 697, 701, 702 (1970).

We are of the opinion that the conduct of the Bank of North Dakota in no way contributed to or induced the mistake. We are also of the opinion that the Bank of North Dakota will reap no unconscionable advantage. Had it not sold these securities to the plaintiff, it might well have sold them to others who wanted revenue bonds and who were not subject to the restrictions of Section 40–57–10, N.D.C.C.

 If it could be contended that the plaintiffs in failing to be cognizant of the limitation contained in Section 40–57–10, N.D.C.C., committed a mistake of law, they still cannot prevail. Nothing in the record indicates that the Bank of North Dakota, the other party to the contract, was aware of the restriction upon purchases of this type of security by banks of this state, and thus Subsection (2) of Section 9–03–14 does not apply. As for the possible application of Subsection (1) of Section 9–03–14, N.D.C.C., we find no misapprehension of the law by all the parties. Even if neither the seller of the securities nor the purchaser of the securities was cognizant of the restriction contained in Section 40–57–10, N.D.C.C., such a fact could not justify a rescission of the contract under Subsection (1), as such a fact would

not constitute a misapprehension or a misunderstanding by the parties of the meaning of any particular law. It might instead constitute an ignorance of the law. If we were to permit a rescission based upon ignorance of the law, we would set a precedent which could completely upset the business community of this state.

We believe that the plaintiffs have shown no basis for a recovery from the State of North Dakota in this case and accordingly, for the reasons stated in this opinion, the judgment of the district court is reversed.

TEIGEN, C. J., and PAULSON, KNUDSON and STRUTZ, JJ., concur.