**H. A. DARDIS, d/b/a Dardis Realty,
Plaintiff and Appellant,**

v.

**EDDY BROTHERS et al., Defendants
and Appellees.**

Civ. 8982.

Supreme Court of North Dakota.

Aug. 29, 1974.

Rehearing Denied Dec. 4, 1974.

Ottmar & Nething, Jamestown, for plaintiff and appellant.

MacKenzie & Jungroth, Jamestown, for defendants and appellees.

ERICKSTAD, Chief Justice.

This is an appeal by a licensed real estate broker, Henry Dardis, doing business as

Dardis Realty, appellant, from a judgment entered July 6, 1973, by the District Court of Stutsman County, as a result of a jury verdict denying him recovery in his action against the heirs of Frank R. Eddy, appellees, for payment of a real estate commission, and from a judgment of the same court entered on September 4, 1973, denying his motion for an order for judgment notwithstanding the verdict or in the alternative for a new trial.

Mr. Dardis alleges that on or about March 27, 1970, the Eddys employed him as a broker to find a buyer for approximately 2,500 acres of farmland in the Frank R. Eddy estate; that they agreed to pay him for his services at the rate of 5½% on the sale price of the property; that he produced a buyer, John Hollarn, who executed an earnest money contract on April 14, 1970, agreeing to purchase the property for $320,000; that Hollarn paid $5,000 at the time as earnest money; that Mr. Hollarn was ready, willing, and able to consummate the purchase of the property on the terms submitted by the Eddys, but that the Eddys then refused to sell the property and returned the $5,000 earnest money. Mr. Dardis contends he was damaged in the amount of the commission, $17,600, by the refusal to sell.

The Eddys answered and counterclaimed. Their answer asserts that in March and April of 1970, one Vern Hoggarth was a tenant in possession of the land in question under a lease agreement with them; that the sale to John Hollarn was agreeable only if the lease with Hoggarth was properly terminated, and that Mr. Dardis assured them there would be no problem with Hoggarth; that on or about May 4, 1970, Hoggarth commenced a lawsuit against Hollarn seeking to enjoin Hollarn from entering the premises and asking that his lease with the appellees be declared in full force and effect; and that they were prevented from completing the sale with Hollarn because of the action taken by the district court sustaining Hoggarth's claim.

The Eddys in their counterclaim also allege that Dardis was negligent in attempting to sell the land in question, because he knew about the existing Hoggarth lease and because he led the appellees into making commitments to Hollarn by assuring them that the Hoggarth lease was rescinded.

At the close of all evidence the trial court, over Dardis's objection, granted the Eddys' motion to amend the answer to assert that because of a mistake of fact or law the listing agreement did not exist.

Upon trial of the action, the jury returned a verdict dismissing the claim of Dardis and the counterclaim of the Eddys.

Mr. Dardis has set forth ten separate specifications of error in his brief, which will be discussed in an appropriate manner later in this opinion. In summary, error is alleged in a denial of Mr. Dardis's motion *in limine*, in a denial of several motions to strike, in a ruling on an estoppel question regarding the validity of the listing agreement, in rulings on questions relating to "mistake", in failing to give a requested jury instruction, in allowing an amendment to the pleadings after submission of all the evidence, and in denying the motion for judgment notwithstanding the verdict or in the alternative a new trial.

The record reveals that this action was commenced in April of 1971, with final pleading served May 20, 1971. Service of the trial briefs was completed October 18, 1972, and a pretrial hearing was held November 30, 1972. The matter was set for trial January 30, 1973, but was later changed by mutual agreement. On December 15, 1972, a motion *in limine* and supporting documents were forwarded to the district court. On April 4, 1973, after the Eddy reply was submitted, the district court denied the motion. The motion *in limine* was to the effect that under Section 31–11–06, N.D.C.C., the Eddys were estopped from denying the existence of a listing agreement for the sale of their property. By it Dardis sought to preclude the Eddys from

"using any pleading, testimony, remarks, questions, or argument which might inform the jury of this denial". The trial court denied the motion. The denial of this motion is asserted to be in error.

Dardis asserts that in denying his motion *in limine* the court permitted the Eddys to take a position at the trial completely contrary to the position they took in breaking their contract originally. He says that our law of estoppel was enacted to prevent that type of unfair treatment. He argues that when the Eddys attempted to rescind the listing agreement, they did so by a notice which merely stated that "the property we have listed with you is as of this date withdrawn", and that during the trial of the Hoggarth v. Hollarn action involving the legality of the lease, Mr. Hendry K. MacKenzie, the law partner of counsel for the Eddys in the instant case, stated that the reason for returning the $5000 down payment was that the purchaser would not be able to farm the land nor would he be able to purchase it, because of the outstanding lease.

In making his motion *in limine*, Dardis anticipated that the basic Eddy defense in the trial of this action would be the nonexistence of a listing agreement between Dardis and the Eddys, resulting from a mistake of fact or law.

Dardis relies on a 1904 Kansas decision, Redinger v. Jones. In that case the court said:

" 'Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law.' " Redinger v. Jones, 68 Kan. 627, 75 P. 997 at 1001 (1904).

■ This court has often delineated the essential elements of estoppel. In a recent case we stated that:

"Estoppel is based upon misleading words or conduct of one who is to be estopped, relied upon by the party claiming the benefit of the estoppel, which words or conduct induced the party claiming an estoppel to act or to refrain from acting, to his prejudice." Frederick v. Frederick, 178 N.W.2d 834 at 839 (N.D. 1970).

For sake of argument only, if we were to assume that the Eddys, by their conduct, misled Dardis and that he relied upon their conduct, Dardis still has not shown that he was induced thereby to act to his prejudice.

■ Considering these circumstances, and being mindful of the fact that the doctrine of equitable estoppel should always be so applied as to promote the ends of justice, this court is compelled to refuse to apply the doctrine of equitable estoppel in this instance.

We accordingly find no error in the trial court's denial of Dardis's motion *in limine*.

Since the same issue is involved in Dardis's motion to strike certain parts of the defendant's answer, we shall not discuss that motion in detail. It is our view that that issue is determined by what we have thus far said in this opinion.

In appellant's Issue 3, Dardis contends that the trial court erred in denying plaintiff's motion to strike from defendants' answer and counterclaim paragraphs III, IV, and VI, on the grounds that they constitute an insufficient defense.

The paragraphs in question relate to the negotiations surrounding the execution of the earnest money contract signed by Hollarn and Dardis, the latter signing for the Eddys.

It is Dardis's contention that evidence of these negotiations should have been excluded by the parol evidence rule, as codified in Section 9–06–07, N.D.C.C., and that, therefore, any reference to the negotiations contained in defendants' pleadings should have been stricken as an insufficient defense,

pursuant to Rule 12(f) of the North Dakota Rules of Civil Procedure.

This proposition is unconvincing, for the parol evidence rule cannot be said to apply in this instance.

As set forth in North Dakota case law, parol evidence is inadmissible to vary or contradict the terms of a written contract between the parties to the contract. See, e. g., First National Bank, Bismarck v. O'Callaghan, 143 N.W.2d 104 (N.D.1966).

"Such parol testimony is not excluded because of no probative value, but because it is against the policy of the law that written contracts should be overturned in that manner." 4 Williston on Contracts 985 (3rd ed. 1961).

In the instant case, the terms of the earnest money contract were not sought to be varied or overturned. The contract between Hollarn and the Eddys had already been rescinded by the parties at the time this lawsuit was initiated.

The earnest money contract is simply not in issue in this case, nor are the parties to that contract the parties to this lawsuit.

Therefore, plaintiff, who brought suit to enforce the listing agreement, may not invoke the parol evidence rule as to the earnest money contract to suppress evidence relevant to the issues in this suit.

Under these circumstances, the trial court did not err in denying plaintiff's motion to strike.

Dardis next asserts that the trial court erred in failing to sustain his objections as set forth in Issues 4 and 5, in overruling his objection as set forth in Issue 6, and in granting the defendants' motion as set forth in Issue 9.

Each of those issues relates to the question of mistake.

Issue 4 is whether the court erred in failing to sustain the plaintiff's objection to any questions of the defense relating to the listing agreement, on the ground that the defendants were estopped from raising these questions.

Issue 5 is whether the court erred in failing to sustain the plaintiff's objection to the defendants' question relating to mistake, on the grounds that it was outside the scope of the pleadings.

Issue 6 is whether the court erred in overruling the plaintiff's objection to the defendants' introduction of defendants' exhibit 9, which is a copy of the farm lease which existed between the Eddys and Vern Hoggarth, their tenant, inasmuch as it was introduced because of its relevance to the issue of mistake, which issue had not been pleaded by the defendants.

Issue 9 is whether the court erred in granting the defendants' motion to amend the pleadings to permit the issue of mistake to be considered.

Dardis asserts that the issue of mistake should have been pleaded as an affirmative defense, and in support thereof refers us to Rule 8(c) of the North Dakota Rules of Civil Procedure.

"(c) Affirmative defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Rule 8, N.D.R.Civ.P.

It is contended that the defense of mistake constitutes either an avoidance or an affirmative defense and thus should have been specifically pleaded.

Although the defense of the Eddys may have been more clear had the defense of mistake been set forth specifically, in light of their response to the motion *in limine* which was made and heard months prior to the trial, it is our view that Dardis was not surprised by their efforts during the trial to establish the mistake, which in essence was that all parties, including Dardis, assumed that the Hoggarth lease had been abandoned by Hoggarth and that it was not enforceable. That mistake, if it existed, affected both the listing agreement and the earnest money contract.

Significant is Rule 15(b). It reads:

"(b) Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. *If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.* The court may grant a continuance to enable the objecting party to meet such evidence." Rule 15, N.D.R.Civ.P. [Emphasis added.]

 It is our view that under all the circumstances of this case the trial court did not abuse its discretion in taking the action which permitted the issue of mistake to be considered; and since that is the essence of each of the asserted errors in Issues 4, 5, 6, and 9, we find those issues to be without

merit. In so concluding, we recognize that a trial court must in some instances give more weight to Rule 15(b) than to Rule 8(c) if the crucial issues in a lawsuit are to be decided and the truth is to be found.

Dardis asserts further that under Rule 9(b) of the North Dakota Rules of Civil Procedure the trial court erred in permitting the amendment of the pleadings at the close of all the evidence. Rule 9(b) reads:

"(b) Fraud, mistake, condition of the mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9, N.D. R.Civ.P.

 It is our view that Rule 15 must also prevail over 9(b) unless under all the facts of the case it would appear that granting the motion to amend the pleadings prejudiced the opposite party. We find no prejudice in the instant case. The plaintiff did not ask for a continuance to prepare to meet the issue, nor did he ask that he be given an opportunity to present evidence relative thereto after the motion to amend the pleadings was granted after the close of all the evidence.

In the instant case, the amendment of the pleadings could have been more specific; however, in light of the fact that not only the Eddys but the plaintiff himself conceded that all believed that the Hoggarth lease was ineffective at the time of the listing of the property with Mr. Dardis and also at the time of the preparation of the earnest money contract with Mr. Hollarn, it would appear to us that the mistake asserted was the mistake relating to the effectiveness of the Hoggarth lease, and that no one was misled by the fact that the pleadings did not so state with particularity.

In light of all the evidence on this subject, we doubt that the jury could have been better apprised of the contentions of the parties by more specific allegations thereof, or that the plaintiff was in any

way injured or damaged by the lack of specificity in this instance.

For these reasons we find no prejudicial error in the trial court's action in conjunction with this issue.

Dardis next contends that the court erred in failing to grant his requested Instruction No. 1 and in amending his requested Instruction No. 2.

Requested Instruction No. 1 read:

"If you find from the evidence that plaintiff on or before May 8, 1970, produced a buyer in the person of John Hollarn, who was ready, willing and able to purchase on the terms set down by the defendants, then you should find for the plaintiff."

■ We think that the trial court acted properly in denying this requested instruction, because it failed to include any admonition concerning the effect of a mutual mistake of fact or law.

The cases relied upon by Dardis as supporting his contention that the trial court erred in not giving his requested Instruction No. 1 are: Koffel v. Rhud, 49 N.D.194, 191 N.W. 464 (1922); and Drury v. Augsburg, 48 S.D. 110, 202 N.W. 284 (1925). Neither of these cases involves rescission or mistake of fact.

The pertinent provisions of our Code follow:

"9–03–01. Requisites of consent.—The consent of the parties to a contract must be:

"1. Free;

"2. Mutual; and

"3. Communicated by each to the other."

"9–03–02. Absence of free consent—Effect.—A consent which is not free is not absolutely void, but may be rescinded by the parties in the manner prescribed by chapter 9–09."

"9–03–03. What renders apparent consent not free.—An apparent consent is not real or free when obtained through:

"1. Duress;

"2. Menace;

"3. Fraud;

"4. Undue influence; or

"5. Mistake."

"9–03–04. When consent deemed voidable.—Consent is deemed to have been obtained through duress, menace, fraud, undue influence, or mistake only when it would not have been given except for one or more of them."

"9–03–13. 'Mistake of fact' defined.—Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in:

"1. An unconscious ignorance or forgetfulness of a fact, past or present, material to the contract; or

"2. Belief in the present existence of a thing material to the contract which does not exist, or in the past existence of such a thing which has not existed."

"9–03–14. 'Mistake of law' defined.—Mistake of law constitutes a mistake within the meaning of this title only when it arises from:

"1. A misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake as to the law; or

"2. A misapprehension of the law by one party of which the others are aware at the time of contracting, but which they do not rectify."

"9–09–02. Rescission—When permitted.—A party to a contract may rescind the same in the following cases only:

"1. If the consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, menace, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds or of any other party to the contract jointly interested with such party;

"2. If through the fault of the party as to whom he rescinds the consideration for his obligation fails in whole or in part;

"3. If such consideration becomes entirely void from any cause;

"4. If such consideration before it is rendered to him fails in a material respect from any cause; or

"5. By consent of all of the other parties."

"9–09–04. Rules governing rescission. —Rescission, when not effected by consent or pursuant to sections 9–08–08 and 9–08–09, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and

"2. He must restore to the other party everything of value which he has received from him under the contract or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

■ These statutes are consistent with the instructions actually given by the trial court and apply to listing contracts as well as any other contract.

■ The court gave an instruction on this issue, which we believe adequately informed the jury of the law. That instruction follows:

"If you find from the evidence that the plaintiff on or before May 8, 1970, produced a buyer who was ready, willing and able in the person of John Hollarn to meet the terms of the defendants, and there was no mistake of fact or law as set forth herein, but the defendants refused to consummate the sale, your verdict must be for the plaintiff even though the defendant's refusal was brought about because title to the real estate was encumbered by a lease."

In Security State Bank of Wishek v. State, 181 N.W.2d 225 (N.D.1970), we discussed both mistake of fact and mistake of law. In that case the plaintiffs purchased certain revenue bonds from the Bank of North Dakota which they thought to be general obligation bonds of Cass County, but which were, in fact, Cass County Industrial Development Revenue Bonds and not guaranteed by the County.

Plaintiffs asserted that they were entitled to a rescission of the contract due to a mistake as to the nature of the bonds. This court was of the opinion that the Bank of North Dakota in no way contributed to or induced the mistake, and furthermore that the State reaped no unconscionable advantage from the enforcement of the contract. In reversing the district court's judgment for the plaintiffs, this court then stated, in Syllabus ¶ 4:

"The power to cancel for mistake should not be exercised against a party whose conduct has in no way contributed to or induced the mistake, and who will obtain no unconscionable advantage thereby." Security State Bank of Wishek v. State, 181 N.W.2d 225 at 226 (N.D. 1970).

■ In the instant case it is asserted that Dardis in no way contributed to or induced the mistake. The jury may, however, have concluded to the contrary. In any event, it would appear to us that Dardis would reap an unconscionable advantage if the listing agreement were enforced and the Eddys were required to pay him as if the sale were consummated.

Since Dardis did not request a specific instruction on mistake, but instead asserted that none should be given, we are less inclined to be critical of the instruction given on the issue of mistake by the trial court.

What we have said heretofore relative to plaintiff's requested Instruction No. 1 applies to the amendment to plaintiff's requested Instruction No. 2.

We therefore conclude that the trial court committed no error in denying plaintiff's requested Instruction No. 1 and in amending plaintiff's requested Instruction No. 2.

Dardis next asserts, in essence, that the trial court erred in giving the following instruction:

"To have a contract all parties must consent and the consent must be free, mutual and communicated to each other. Consent is not free when it is obtained through mistake and it is deemed to be given by mistake when the consent would not have been given had the true facts been known.

"We can have both mistake of law and mistake of fact. Mistake of law is a misapprehension of the law by all parties, all supposing that they knew and understood it and all making substantially the same mistake. Mistake of fact is belief in the present existence of a thing material to the contract which does not exist and in the past existence of a thing which has not existed.

"If you find a mutual mistake in this case, then no contract between the parties existed."

▇ Dardis asserts that it was error to give this instruction, for the reason that none of the evidence introduced indicated that a rescission of the listing agreement had been made until such time as the plaintiff had completely fulfilled his side of the unilateral contract.

He cites no law to support this reasoning, and we have found none to support it.

It is our view that a mistake in many instances is not found until the contract has been completed, not only by one party but by both. See Mitzel v. Schatz, 175 N.W.2d 659 (N.D.1970). In that case we allowed a partial rescission of a contract after the contract had been executed and payment made thereunder.

Dardis further asserts that because of the provisions of Section 32–04–22, N.D.C.C., the trial court erred in instructing on mistake.

That section reads:

"32–04–22. Rescission not adjudged for mere mistake.—Rescission cannot be adjudged for mere mistake, unless the party against whom it is adjudged can be restored to substantially the same condition as if the contract had not been made." N.D.C.C.

It is Dardis's contention that this section means that unless he is paid the full 5½% commission, he is not restored to substantially the same condition he was in prior to the contract.

We think what was said in Schaff v. Kennelly, 61 N.W.2d 538 (N.D.1953), applies in the instant case.

In that case we recited a rule which recognized certain exceptions to the application of our statute. In *Schaff* we said:

" * * * A rescission cannot be effected without an offer to restore. * * *

* * * * * *

"The rule that we have been discussing has certain exceptions based upon sound reason, for instance, when restitution is rendered impossible by the act of the defendant, * * * or where the defendant has parted with nothing of value. * * *" Schaff v. Kennelly, *supra,* 61 N.W.2d 538 at 546, 547.

▇ It is our view that Dardis has not demonstrated that he has parted with anything of value to which he should be restored.

He may have lost some time, but even that is minimal, and he has made very little showing of the same in the record.

Accordingly, since Dardis parted with nothing of value, the Eddys were not required to offer to restore him to substan-

tially the same position he was in prior to the listing agreement.

Dardis's last contention is that the court erred in denying his motion for judgment notwithstanding the verdict.

■ We have often said that in considering an order denying a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the verdict. Lembke v. Unke, 171 N.W.2d 837 (N.D.1969); Sprenger v. Sprenger, 146 N.W.2d 36 (N.D.1966); Julson v. Loyal Order of Moose Number 822, 140 N.W.2d 39 (N.D.1966).

The following facts are pertinent.

Henry Dardis was a duly licensed real estate broker doing business in Jamestown as Dardis Realty and he had been a licensed real estate broker for about eleven years.

Dardis received an inquiry from W. L. Braun, a real estate broker in Turtle Lake, North Dakota, as to whether Dardis had for sale a farm of from sixteen hundred to twenty-five hundred acres,. because Braun had a purchaser, Hollarn, for such property.

After inquiry, Dardis was informed by Robert Mountain, a banker, that the Eddys had two farms and that they would sell one. Through negotiations with Mountain, who indicated that he had authority from the Eddys to give an open listing, Dardis acquired an oral listing of the property, although he was not aware of any writing between the Eddys and Mountain authorizing Mountain to tell Dardis that the Eddy farm was for sale. The only contact Dardis had with the Eddys was with Ray Eddy, and up to the time of negotiations with Mountain, Dardis had no negotiations with the rest of the Eddy family.

On the day of the listing, Dardis discussed the Hoggarth lease with Mountain and at that time Dardis understood that the terms of the lease had not expired but that "by mutual agreement the Eddys and Mr. Hoggarth had cancelled this agreement." (Dardis so admitted on cross-examination.)

Dardis never discussed the validity of the lease with Hoggarth.

On April 14, 1970, an earnest money contract was entered into between Hollarn and the Eddys, with Dardis signing the agreement for the Eddys. By the terms of the agreement, Hollarn was to have possession of the property on April 15, 1970, and not later than May 15, 1970. Hollarn did, in fact, move onto the property on April 15, 1970, and began to work the land. Everyone involved in the transaction proceeded as if the Hoggarth lease were not in effect.

Thereafter, the tenant Hoggarth started a lawsuit to enforce the lease, and as a result of that lawsuit Mr. Hollarn was ordered to leave the farm and Mr. Hoggarth was put back in possession. The Eddys were willing to sell to Mr. Hollarn subject to the lease, but Mr. Hollarn was not willing to buy subject to the lease (there being three farming seasons left on the lease).

On May 8, 1970, the Eddys sent to Dardis a letter stating: "Regarding Frank R. Eddy estate land, Helen Eddy land, Frank R. Eddy, Jr. land, John Michael Eddy land. Dear Sir: This is to notify you that the property we have listed with you is as of this date withdrawn. Due to a change in circumstances, we have determined not to sell any of our North Dakota land at this time."

On May 8, 1970, Mr. Dardis received a letter from Mr. MacKenzie, stating: "As you already know, the District Court upheld the Hoggarth lease. Therefore, Mr. Hollarn will not be able to farm the land nor will he be able to purchase it because of the outstanding lease. I am at this time enclosing a cashier's check in the amount of $5,000. This is the down payment Mr. Hollarn put up and therefore should be returned to him." Thereafter, Dardis returned to Hollarn the $5,000.

■ Considering the evidence in the light most favorable to the verdict, we believe the jury could reasonably have concluded that a material mistake of fact existed, to wit: that the Hoggarth lease had

been abandoned by Hoggarth and that it was not enforceable. It appears that the Eddys would not have entered into the listing agreement had it not been for this mistake and that the Eddys acted promptly and properly to rescind when the mistake was discovered. Accordingly, the trial court did not commit error in failing to grant the motion for judgment notwithstanding the verdict.

For the reasons stated herein we affirm both judgments.

KNUDSON and PAULSON, JJ., concur.

VOGEL, Judge (concurring specially).

I would point out to the Bar, which might believe that the instructions in this case are approved by us, that in my opinion the instruction quoted in the majority opinion is defective because it fails to include in the definition of "mistake of fact" the words "not caused by the neglect of a legal duty on the part of the person making the mistake" which are part of the statutory definition (Sec. 9–03–13, N.D.C.C.). However, this omission was not pointed out to the trial court and was therefore waived. The quoted language may be vital in some cases. See Security State Bank of Wishek v. State, 181 N.W.2d 225 (N.D.1970).

I cannot concur with those portions of the opinion which state or imply or assume for the purpose of argument that a real estate agent who finds a buyer, no matter how slight the effort involved, is not prejudiced by the rescission of his contract, or reaps an unconscionable advantage if he receives his commission, or is entitled to his commission only if the sale is consummated, or has not parted with anything of value.

Further, I believe the allowance of amendments to pleadings is a matter of discretion with the trial court, and that we should not base our approval of the allowance of amendments in terms of one rule having more weight than another, but simply upon the power of the trial court to exercise discretion in the allowance of amendments. The rules are not in conflict with, but are supplementary to, each other.

JOHNSON, Judge.

I join in the special concurrence of Judge Vogel.