MARY J. NASH v. NORTHWEST LAND COMPANY, ET AL., PETER EHR AND DENNIS M. BROGAN AND MARGARET BROGAN, WILLIAM FLUMMERFELT AND MARY FLUMMERFELT, APPELLANTS.

Opinion filed June 25, 1906.   Rehearing denied July 25, 1906.

**Mortgage — Bidder at a Void Sale Equitable Assignee.**

1.   A sale under a void foreclosure of a real estate mortgage, where the premises have been bid in for the full amount of the debt, operates as an equitable assignment of the mortgage.

**Same — Subsequent Conveyance by Purchaser at Void Sale.**

2.   All subsequent deeds by such purchaser or his grantees, purporting to convey the supposed title derived from such sale, have the same effect.

**Same — Subsequent Purchase of Note and Mortgage.**

3.   One who purchases the note and mortgage after maturity from the original mortgagee after a void foreclosure acquires no right thereto as against one in possession of the premises, who by virtue of conveyances from the purchaser at the sale is an equitable assignee of such mortgage.

**Same — Mortgagee in Possession.**

4.   Where such equitable assignee takes possession of the mortgaged premises with the express or implied consent of the mortgagor, he is to be deemed a mortgagee in possession.

**Same — Adverse Possession.**

5.   A mortgagee in possession may hold adversely to the mortgagor.

**Same.**

6.   When one who in good faith claims title under a void foreclosure sale takes possession of the mortgaged premises under such claim, but with the consent of the mortgagor, although he is deemed to be a mortgagee in possession, his possession is adverse to the mortgagor from its inception.

**Same — Statute of Limitations.**

7.   Such adverse possession puts the statute of limitations in motion against the remedies of the mortgagor.

**Adverse Possession — Acquisition of Title.**

8.   When an adverse possession of real property has continued for a sufficient length of time, so that all remedies of the owner to recover the land or enforce his rights are barred by the statute of limitations, such adverse possession operates to divest the former owner's title and vest it in the adverse occupant.

**Same — Computation of Time — Successive Occupants.**

9. Where the successive adverse occupants hold in privity with each other under the same claim of title, the time limited for maintaining an action may be computed by the last occupant from the date when the cause of action accrued against the first adverse possessor.

**Remedy of Mortgagor.**

10. The only remedy of the mortgagor against the mortgagee in possession while that relation continues is a suit in equity.

**Statute of Limitations — Suit by Mortgagor.**

11. The twenty-year limitation fixed by sections 5188, 5189, Rev. Codes 1899 (sections 6774, 6775, Rev. Codes 1905), does not apply to such suits.

**Same.**

12. The right to maintain such an equitable action by the mortgagor is limited by section 5207, Rev. Codes 1899, (section 6793 Rev. Codes 1905), to ten years from the time the cause of action accrued.

**Adverse Possession — Title Acquired.**

13. A title acquired, as in this case, by operation of the statute of limitations, is not a mere equitable right, but is a perfect legal title, which may be proved under a complaint alleging a fee-simple title in the form prescribed by the statute relating to actions to quiet title.

Appeal from District Court, Ward county; *Palda, jr.,J.*

Action by Mary J. Nash against the Northwest Land Company and others. Judgment for plaintiff, and defendants appeal.

Affirmed.

*McClory & Barnett,* for appellants Brogan and Flummerfelt.

An equitable title cannot be proven under a pleading alleging an ownership in fee without setting up the facts constituting the equitable title. McClory v. Ricks, 11 N. D. 38, 88 N. W. 1042; Dever v. Cornwell, 10 N. D. 123, 86 N. W. 227; Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855; Hersey et al. v. Lambert, 52 N. W. 963; Stuart v. Lowry, 51 N. W. 662.

There can be no mortgagee in possession without the consent of the mortgagor. Rogers v. Benton, 38 N. W. 765; McClory v. Ricks, supra; Finlayson v. Peterson, supra; 1 Am. & Eng. Enc. Law (2nd Ed.) 817:

*John E. Greene,* for respondent.

Where a mortgagee is in possession of the mortgaged premises, with the consent, expressed or implied, of the mortgagor, until the mortgagor's right of redemption has been cut off by the statute against an action for an accounting and to redeem, such mortgagee becomes the owner of the legal title. Rogers v. Benton, 38 N. W. 765; Backus v. Burke, 65 N. W. 459; Houts v. Hoyne, 84 N. W. 773; Hubbell v. Sibley, 50 N. Y. 468; Russell v. Lumber Co. 48 N. W. 3. Mesne conveyances transfer the mortgage. Johnson v. Sandhoff, 14 N. W. 889; Cook v. Cooper, 7 L. R. A. 273; Russell v. Lumber Co. supra.

Where the mortgagor wholly abandons the premises, his consent to the mortgagee's possession is implied. Russell v. Lumber Co. supra; Cook v. Cooper, supra; Rogers v. Benton, supra.

ENGERUD, J.   Plaintiff, claiming to be the owner in fee of the real property in controversy, which consists of two lots and buildings thereon in the city of Minot, brought this action to quiet her alleged title. The action was commenced in February, 1904. The complaint is in the form prescribed by chapter 5, p. 9, Laws of 1901 (section 7522, Rev. Codes 1905). The defendants Brogan and Flummerfelt answered, denying plaintiff's title to one of the lots (lot 10 of block 3 of the original townsite of Minot), and alleging title in themselves. The defendant Peter Ehr in his answer alleges that he is the assignee and holder of a mortgage upon said lot 10 executed by defendants Brogan and Flummerfelt, who, he alleges, were at the time of executing the mortgage, and still are, the owners of the said lot 10, and he prays foreclosure of the mortgage. No other defendants appeared. There was a trial to the court without a jury, resulting in a judgment quieting the title in plaintiff as prayed for in the complaint. The defendants Brogan and Flummerfelt and Peter Ehr appeal from the judgment and demand a retrial of all the issues; a statement of the case having been duly settled for that purpose.

The facts developed by the evidence are as follows: On April 1, 1889, defendants Dennis M. Brogan and William Flummerfelt were the owners of said lot 10 of block 3 of the original townsite of Minot. They held the fee-simple title as tenants in common. On that day they executed and delivered to the Bank of Minot, a banking corporation, a mortgage of said property to secure the

payment of a promissory note made by them that day to the said
Bank of Minot, for the sum of $2,100 and interest from its date
at 8 per centum per annum, payable semi-annually.  The interest
payments were evidenced by coupons attached to the principal note.
The principal note was due April 1, 1894.  In May, 1890, said
Bank of Minot, claiming that there was a default by the mortgagor
authorizing a foreclosure, instituted proceedings to foreclose the
mortgage by advertisement under the power of sale therein con-
tained.  The sale under these proceedings was made by the sheriff
of Ward county on May 31, 1890, the Bank of Minot being the
purchaser for the full amount of the debt.  A certificate of sale
was executed to said bank and recorded.  After the year for re-
demption had expired, a sheriff's deed in proper form was executed
to said bank and was recorded.  It is conceded that this attempt
at foreclosure was void because the notice of sale was not pub-
lished a sufficient length of time before the sale.  After receiving
the sheriff's deed, the Bank of Minot conveyed the premises to
the Merchants National Bank of Devils Lake by warranty deed
dated March 15, 1892, and recorded March 21, 1892, reciting a
consideration of $3,000.  The Merchants National Bank of Devils
Lake conveyed the premises to the First National Bank of Minot
by a warranty deed, dated August 31, 1892, and recorded.  This
deed also recites a consideration of $3,000.  On October 7, 1892,
said First National Bank of Minot sold the premises to Strain
Bros., a copartnership composed of Herbert Strain and Joseph
Strain, and placed them in possession; at the same time executing
to them a warranty deed reciting a consideration of $2,500.  This
deed was dated October 7, 1892, and recorded December 5, 1892.
Strain Bros. took actual possession of the property in November,
1892, and held possession of it continuously from that time until
the conveyance to plaintiff.  In the meantime Herbert Strain had
conveyed his interest in the property to his copartner, Joseph
Strain, by a deed duly recorded.  On May 2, 1900, Joseph Strain
sold the premises to the plaintiff, Mary J. Nash, for the sum of
$1,750, and executed to her a warranty deed dated May 22, 1900,
and duly recorded.  Mrs. Nash took immediate possession and
has since occupied the premises.  It is undisputed that the con-
sideration recited in the respective deeds above mentioned was ac-
tually paid by the respective grantees.  Although the attempted
foreclosure was void and its invalidity appeared on the face of the

recorded proceedings, it is wholly undisputed that Strain Bros. and Mrs. Nash had no actual knowledge of such invalidity when they received their respective deeds. They bought, paid for, and occupied the premises in good faith, in the belief that they had acquired the fee title. The Bank of Minot became insolvent in 1893 and was placed in the hands of a receiver. The Brogan and Flummerfelt note and mortgage were found among the papers and assets of the Bank of Minot. On February 14, 1898, the receiver sold and assigned to B. S. Brynjolfson all the assets of the Bank of Minot, and the note and mortgage in question were included in the assignment and delivered to the assignee. Brynjolfson subsequently sold a large number of the notes and mortgages so acquired including the note and mortgage in question, to the defendant Peter Ehr; who paid $1,000 for the entire lot. On these facts, it is plain that Ehr acquired no right to the mortgage. The foreclosure being void, and having been made for the entire debt secured by the mortgage, the deed of the Bank of Minot operated as an equitable assignment of the mortgage. Brynjolfson v. Osthus, 12 N. D. 42, 96 N. W. 261. Each of the subsequent deeds must necessarily have the same effect. Cooke v. Cooper, 18 Or. 142, 22 Pac. 945, 7 L .R. A. 273, 17 Am. St. Rep. 709; Johnson v. Sandhoff, 30 Minn. 197, 14 N. W. 889. The note and mortgage were purchased from the receiver after maturity, and hence the purchaser acquired no better right than that of the Bank of Minot. Moreover the possession of Strain Bros. who claimed title through recorded mesne conveyances from the purchaser at the void foreclosure sale was notice of their rights. The sufficiency and admissibility of the evidence to establish the foregoing facts are challenged by Ehr, but we do not think any of the objections are well founded. The objections urged by him are the same as those urged by his co-appellants and will appear in the discussion of the points urged by the other appellants, to defeat the plaintiff's claim of title. Ehr's claims being thus disposed of the action may be dealt with as one between Mrs. Nash and Brogan and Flummerfelt.

As is apparent from the foregoing statement of the facts, the plaintiff asserts that she and her grantors were mortgagees in possession, and she claims to have acquired an indefeasible title by the operation of the statute of limitations. It is a well-settled rule of law that when an adverse possession of real property has continued for a sufficient length of time, so that all the remedies

of the owner to recover the land have become barred by the statute of limitation, the title of the former owner is divested and becomes vested in the adverse occupant. Sprecker v. Wakeley, 11 Wis. 432; Rogers v. Benton, 39 Minn. 39, 38 N. W. 765, 12 Am. St. Rep. 613; Brown on Lim. and Adv. Pos., sections 1, 4, and cases cited in notes to section 4. See, especially, Campbell v. Holt, 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483, and Chapin v. Freeland, 142 Mass. 383, 8 N. E. 128, 56 Am. Rep. 701. The contest as to ownership hinges upon the answers to the following questions: (1) Was the possession of Mrs. Nash and her grantors that of mortgagees in possession? (2) Was such possession adverse? (3) What remedies accrued to Brogan and Flummerfelt to enforce or protect their rights in the land? (4) Have all those remedies been barred by the statute of limitations?

In this state by the express provision of our Civil Code, a mortgage is a mere lien, and of itself does not transfer the title or right of possession to the mortgagee or his assignees before or after default in the conditions of the mortgage. Rev. Codes 1899, sections 4699, 4700 (Rev. Codes 1905, sections 6149, 6150); Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855; McClory v. Ricks, 11 N. D. 38, 88 N. W. 1042. The mortgagee, however, may lawfully acquire the possession, but the consent of the mortgagor or his successors in interest is essential to such possession by the mortgagee. Rev. Codes 1899, section 4714 (Rev. Codes 1905, section 6164); Finlayson v. Peterson and McClory v. Ricks, supra. The mortgage in question contains a stipulation to the effect that in case the mortgagors should fail to pay the taxes on the mortgaged property when due, or should fail to keep the same insured for the benefit of the mortgagee, or should make default in the payment of interest on the debt, the mortgagee might declare the whole debt due and take possession of the premises and foreclose the mortgage. It is admitted that the mortgagors never paid any part of the debt, principal or interest, and have never paid any taxes on the property since the mortgage was given. At the time the mortgage was given, the property was occupied by the mortgagors' tenants. The appellants allege that, at the time the mortgage was given, they entered into an agreement with the Bank of Minot to the effect that the bank was to look after the mortgaged premises and collect the rent for the mortgagors and apply same to the payment of taxes, insurance, interest and repairs. They allege that the

rents collected were more than sufficient to pay these items, and eventually pay the entire debt.  Hence they assert that there was no default authorizing the mortgagee to take possession or fore-close.  The competency and sufficiency of the proof offered to sup-port this claim on the part of the defendants is very doubtful.  It is unnecessary to discuss it, because we are clearly of the opinion that whatever the facts may be in that regard they are immaterial to the decision of this case.

The defendants have slept too long on their rights to be per-mitted to advance such a claim against innocent third persons at this late day.  More than ten years before the commencement of this action, Strain Bros. in good faith entered into the open and exclusive possession of the premises, claiming title adversely under a recorded deed which they supposed conveyed to them a good title. For over three years before that time, Brogan and Flummerfelt had not paid the slightest attention to the mortgage debt or prem-ises.  They had apparently abandoned all claims to the property and permitted the Bank of Minot to take possession and sell and convey the same as an owner.  Assuming that the circumstances were such that the mortgagors were not chargeable with notice of the adverse claims of those who preceded Strain Bros. in the claim of title, and hence cannot be deemed to have consented to an act of which they had no notice, there is no room for question as to the effect of Strain Bros.' possession.  It cannot be imagined how the mortgagors could have remained for any length of time in ig-norance of the possession by Strain Bros., unless they had deliber-ately abandoned the premises and intended to surrender them to the mortgagee.  The open and notorious possession of Strain Bros. under their recorded deed, was, in law, notice to all the world of the nature of their claim to the land.  After Strain Bros. took pos-session, claiming as owners, the mortgagors remained silent and in-active as before.  They never paid any taxes, insurance or repairs on the premises, or paid or offered to pay any part of the mortgage debt, or in any other manner evidence the slightest interest in the property until the commencement of this action.  They had ap-parently wholly abandoned the premises to the mortgagees.  If they ever had objections to the acts of the mortgagee or its successors, they never made them known.  Thus, those who were occupying the premises in the belief that they owned them, were lulled into security and paid all the expenses and assumed all the risks incident

to ownership, and have expended large sums of money in valuable improvements on the buildings. Common honesty and fair dealing as well as the instinct of self-protection, required that the mortgagors should make their rights known under such circumstances. They cannot be permitted to say that they willfully concealed their claim. Their silence is explainable, consistently with honest and intelligent conduct on their part, only on the theory that they consented to and acquiesced in the possession on the part of the mortgagee and its successors. The authorities therefore hold that consent will be implied under such circmustances. Rogers v. Benton, 39 Minn. 39, 38 N. W. 765, 12 Am. St. Rep. 613; Russell v. Lumber Co. 45 Minn. 376, 48 N. W. 3. It is undisputed that when Strain Bros. took possession, the mortgage debt had not been paid, even if the rents collected had been applied thereon. The deeds from the Bank of Minot to the Devils Lake Bank and the deeds from the latter to the First National Bank of Minot, as well as the deed from this bank to Strain Bros., were not properly acknowledged. The forms of acknowledgment prescribed for an individual grantor were used instead of the form required where an officer of a corporation makes acknowledgment as such officer. The originals of two of these deeds could not be produced and secondary evidence of them was resorted to. The competency of this secondary evidence is challenged. The deeds, although not originally entitled to record by reason of the defective acknowledgments, were actually recorded. These defective acknowledgments were cured by chapter 1, p. 1, Laws of 1895, and the record of the instruments by that act, became admissible in evidence with the same force and effect as if originally valid. By what we have said with respect to the evidence of consent, we do not wish to imply that one who has peaceably and in good faith acquired possession of land claiming title under a void foreclosure cannot be deemed to be a mortgagee in possession unless the express or implied consent of the mortgagor is shown. The facts of this case do not require any expression of opinion on that point. The evidence in this case clearly shows implied consent. We hold, therefore, that Strain Bros. became mortgagees in possession, and the plaintiff has succeeded to their rights.

Was their possession adverse? It is contended by appellants that a mortgagee in possession cannot be in law an adverse claimant. It is true that loose expressions to that effect may be found in

the books, but such an unqualified statement is very far from the truth. A mortgagee in possession may or may not be holding adversely. The only necessary essentials to give rise to that relation are the existence of a mortgage, and the consent by the mortgagor that the mortgagee take or hold possession of the property by reason of the mortgage and as security for the debt. The acknowledgment or recognition of the mortgagor's right, on the part of the mortgagee, when the possession is taken or while it is held, is not essential. So long as the relation continues, the rights and liabilities arising out of it are the same, whether the mortgagee acknowledges the relation or not. This is illustrated by the case of Finlayson v. Peterson, above cited. The defendant in that case was held to be a mortgagee in possession, although her possession was unquestionably adverse from its inception. The following cases illustrate and support the same proposition: Robinson v. Fife, 3 Ohio St. 551; Rogers v. Benton (Minn.) 38 N. W. 765, 12 Am. St. Rep. 613; Hubbell v. Sibley, 50 N. Y. 468; Miner v. Beekman, 50 N. Y. 337; Wood on Lim. section 225. So long as the mortgagee acknowledges or recognizes the mortgagor's right to the land, the statute of limitations does not run against the latter's remedies. McPherson v. Hayward, 81 Me. 329, 17 Atl. 164; Waldo v. Rice, 14 Wis. 286. And conversely, when the mortgagee in possession denies the mortgagor's rights, the statute is put in motion. Of course, where the mortgagee is permitted to take possession under an agreement on his part to hold in subjection to the mortgagor's rights, such possession is not deemed adverse so as to set the statute of limitations in motion against the mortgagor until the mortgagee distinctly disavows his obligations as such, and notice thereof is brought home to the mortgagor. This is so because until the mortgagor has notice of the repudiation of the agreement, he has the right to presume that the original arrangement continues. Where, however, the mortgagee's possession is adverse from the beginning and he has never acknowledged any obligation to the mortgagor, there is no ground for the presumption above mentioned and the act of taking possession not only gives rise to a cause of action in favor of the mortgagor, but also starts the statute of limitations running against such cause of action. It is therefore clear that the statute commenced running against the mortgagor when Strain Bros took possession in November, 1892,

even if it be assumed that it had not been put in motion before. It has been running uninterruptedly since, because Joseph Strain who had acquired his brother's rights, relinquished the possession to Mrs. Nash, who was his grantee and who has ever since held the possession so acquired. The transfer of the possession did not give rise to a new cause of action. The cause of action accrued to the mortgagor when the adverse possession commenced, and that cause of action remained the same even though other parties have succeeded to the rights of the adverse claimant. Paine v. Doods (N. D.) 103 N. W. 931.

The plaintiff being a mortgagee in possession claiming adversely, and such adverse possession having continued for more than 10 years before this action was commenced, it is apparent that the mortgagors' rights are barred unless there is some remedy available to them, which is not barred in 10 years. The only actions against which there is a limitation of more than 10 years, are those mentioned in sections 5188 and 5189, Rev. Codes 1899 (sections 6774, 6775, Rev. Codes 1905). Section 5188 relates to "actions for the recovery of real property or for the recovery of the possession thereof" and section 5189 relates to a "cause of action, or defense or counterclaim to an action founded upon the title to real property or to rents or services out of the same." If any action coming within the meaning of these sections is available to the mortgagors, then clearly their title is not barred. These provisions are verbatim copies of those found in the Code of Civil Procedure of New York. It is a well-known fact that our Code of Civil Procedure as it appears in the Revised Codes of 1877, was copied from the New York Code. See page v of preface to second edition of Revised Codes of Dakota of 1877. These provisions appear in that code as sections 41 and 42 of the Code of Civil Procedure. These provisions were construed in 1872 by the Court of Appeals of New York in Miner v. Beekman, 50 N. Y. 337, and in Hubbell v. Sibley, 50 N. Y. 468. It was held by that court that a suit by a mortgagor to enforce his right of redemption against the mortgagee in possession did not belong to that class of actions referred to by these provisions. The construction placed upon these provisions in New York, from which state we adopted them, ought to prevail here. The same view also prevails in South Dakota. Houts v. Hoyne, 14 S. D. 176, 84 N. W. 773. The mortgagors' remedies against a mortgagee in

possession, so long as that relation continues, are exclusively of equitable cognizance. This is so because the adjustment of their rights necessarily involves the imposition of equitable terms as a condition precedent to the granting of any relief. Backus v. Burke, 63 Minn. 272, 65 N. W. 459; Jones on Mtges. (6th Ed.) sections 715, 716, and cases cited in notes. That equitable cause of action, as already shown, is not the kind of action which sections 5188 and, 5189 refer to. In jurisdictions where there is no statutory limitation on the right to maintain a suit to redeem, the courts of equity acting on the analogy of the statute of limitations, have held the right barred after the expiration of the time limited for maintaining an action at law to recover the land. Robinson v. Fife, 3 Ohio St. 551; Wood on Lim. (3d Ed.) section 225. In this state the statute of limitations does not specifically mention actions to enforce the mortgagor's right to redeem, but section 5207, Rev. Codes 1899 (section 6793, Rev. Codes 1905) provides that "an action for relief not hereinbefore provided for must be commenced within 10 years after the cause of action shall have accrued." Inasmuch as no other section of the statute applies, it is plain that the mortgagors' cause of action against the mortgagee in possession is limited by this section. Houts v. Hoyne, 14 S. D., 176, 84 N. W. 773. As already stated, that cause of action accrued and the statute commenced to run against it not later than November, 1892, when Strain Bros. took possession, and the bar was complete before this action was commenced. The only remedy by which to enforce their rights being barred, it follows that the plaintiff has acquired the title by reason of the mortgagors' neglect to assert their rights in season.

The appellants contend that proof of a title so acquired was variant from the allegations of the complaint and constituted a failure of proof. The complaint is in the form prescribed by the statute and alleges that the plaintiff is the owner of the land in fee simple. Appellants assert that if the facts show any title in plaintiff it is merely an equitable one. This contention is unsound. The plaintiff's title is not merely an equitable right. It is a perfect legal title acquired by operation of law through the mortgagors' neglect to assert their rights within the time limited by the statute. The nature of the title so acquired is in no manner different from that which would have been acquired by a deed or

by inheritance. It is not necessary to plead the evidentiary facts by which the title was obtained.

We think the judgment is right and it is accordingly affirmed. All concur.