Lloyd T. and Emma **HUBER,**
Plaintiffs and Appellants,

v.

**OLIVER COUNTY,** Defendant and Appellee.

Civ. No. 940346.

Supreme Court of North Dakota.

Feb. 28, 1995.

Albert A. Wolf (argued), Wheeler Wolf, and Webster & Engel, Bismarck, for plain-

tiffs and appellants; appearance by Melissa Hauer.

Charles S. Miller, Jr. (argued), Fleck, Mather & Strutz, Bismarck, for defendant and appellee.

NEUMANN, Justice.

This is an appeal from summary judgment in favor of Oliver County. We affirm in part, reverse in part, and remand for further proceedings.

This dispute centers on a 1961 contract between Lloyd and Emma Huber and Oliver County. The contract grants a provisional qualified easement across the Hubers' land to construct a farm-to-market road. The easement allowed the County to build the road entirely on the Hubers' land rather than building it along the congressional section line. Building the road along the section line would have required crossing Otter Creek numerous times, each time at tremendous expense. By building the road immediately to the east, however, the crossings could be limited to two, one at either end of a small oxbow in the creek. The contract called for the installation of 24–inch squash culverts at each of the two points where the road crosses the oxbow. The County installed the culverts under the road and constructed a concrete diversion structure at the head of the oxbow. The concrete diversion structure was intended to force normal flows to continue along the oxbow, but it also permitted any excess to partially bypass the oxbow in times of extremely high runoff by running along the newly constructed road ditch. The contract also provided that "[i]n the event said culvert proves unsatisfactory for this purpose, then, and in that event, another method shall be examined and installed at the expense" of the County.

In the spring of 1962 the concrete diversion structure installed in 1961 washed out. After the washout, the creek channel changed. Normal flows began to follow the washed-out and deepened road ditch, rather than flowing through the Hubers' oxbow. In 1963 the Hubers requested that the County repair the structure. In 1966 the County hauled in rock ballast in an attempt to force the stream back into its original channel. Almost immediately that, too, was washed out. Again, in 1973, Mr. Huber appeared before the county commissioners, requesting the reconstruction of the low-head dam to divert the stream back into its original oxbow channel, so that he might irrigate the adjacent land. Huber complained again in 1978 about the County's inaction. Finally, in response to his complaints, in 1981 the County told Huber they would attempt to remedy the situation. The County attempted several more times to redirect the stream using rock ballast; however, each attempt failed. The County then employed an engineering firm to give estimates for the reconstruction of the original retention structure. The estimate exceeded $98,000. At this point the County refused to fund the construction.

On appeal the Hubers raise three issues. First, they claim that the trial court improperly found that the statute of limitations had expired; second, they claim that the trial court improperly concluded that they were not eligible to receive specific performance under their contract; and third, they claim the trial court improperly denied them an opportunity to appear and orally argue their motions before the court.

I. Hubers' Statute of Limitations Claim

The trial court ruled that the proper statute of limitations to be applied in this case is NDCC § 28–01–15.[1] Apparently this was due to the fact that the Hubers' contract with the County was contained in an instrument granting the County an easement across their land. An easement is defined at least in part as "[a]n interest which one person has in the land of another." Black's Law Dictionary 509 (6th ed. 1990). Granting

---

1. *28–01–15. Actions having ten-year limitations.* The following actions must be commenced within ten years after the claim for relief has accrued:

    . . . .

    2. An action upon a contract contained in any conveyance or mortgage of or instrument affecting the title to real property except a covenant of warranty, an action upon which must be commenced within ten years after the final decision against the title of the covenantor. . . .

NDCC § 28–01–15(2) (1991).

another an interest in real property necessarily "affect[s] the title to real property." NDCC § 28–01–15(2) (1991). Therefore, on the record before us, we cannot say that the trial court erred in applying this statute of limitations.

■ Based on the trial court's ruling, the Hubers' action had to have been "commenced within ten years after the claim for relief ha[d] accrued." NDCC § 28–01–15. "The application of the statute of limitations is a legal bar to a cause of action. If it is applicable the claim ceases to be a legal obligation and becomes a mere moral one which the law will not lend its aid to enforce." *Hagen v. Altman*, 79 N.W.2d 53, 58–59 (N.D.1956). The statute of limitations begins to run when the underlying cause of action accrues. *Keller v. Clark Equipment Co.*, 474 F.Supp. 966, 969 (D.N.D.1979), *aff'd*, 715 F.2d 1280 (8th Cir.1983), *cert. denied*, 464 U.S. 1044, 104 S.Ct. 713, 79 L.Ed.2d 176 (1984). The Legislature has not defined when a cause of action has accrued; in the absence of such a definition, it is for the judiciary to determine what controls the "accrual" of an action. *Hebron Pub. Sch. Dist. v. United States Gypsum Co.*, 475 N.W.2d 120, 121 (N.D.1991). "A cause of action accrues when the right to commence it comes into existence; when it can be brought in a court of law without being subject to dismissal for failure to state a claim." *Keller*, 474 F.Supp. at 969. We have recognized that "[a]n injury usually arises contemporaneously with the wrongful act causing the injury." *Erickson v. Scotsman, Inc.*, 456 N.W.2d 535, 537 (N.D.1990).

■ A plain language reading of the contract in the instant case contemplates the possibility that the County's provisions to keep water flowing through the Hubers' oxbow might, over time, prove inadequate. As noted, the contract provides that if the "culvert proves unsatisfactory[,] ∴ another method shall be examined and installed at the expense" of the County. However, the contract fails to establish any time limit within which the County is required to accomplish such an alternative remedy. Where the parties have failed to specify a time for performance, the law will allow a reasonable time. NDCC § 9–07–22 (1987). Determination of what a reasonable time may be is a question of fact, depending upon the particular circumstances of each case. *First Nat'l Bank of Belfield v. Burich*, 367 N.W.2d 148, 154 (N.D.1985).

The instant case comes to us from a summary judgment.

Summary judgment is appropriate when, after viewing the evidence most favorable to the party against whom summary judgment is sought, there is no genuine issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Even if a factual dispute exists, summary judgment is appropriate if its resolution will not alter the result. Such facts are not material.

*Berg v. Lien*, 522 N.W.2d 455, 456 (N.D.1994) (citations omitted). In order to determine when the statute of limitations expired for the Hubers, it must be determined when the County failed to perform its obligation under the contract. Determining when a plaintiff's cause of action has accrued is generally a question of fact. *Schmidt v. Grand Forks Country Club*, 460 N.W.2d 125, 129 (N.D. 1990). From the record before us we find no undisputed facts which allow us to determine what a reasonable time for performance would be, or when the County's failure to perform actually occurred. It is therefore impossible for us to calculate when the statute began to run. For these reasons, we remand to the trial court for determination of these factual questions.

■ The Hubers also claim that because of discussions taking place between them and the County, the statute should have been tolled. This claim is essentially one of equitable estoppel against the County. In order to implement an equitable estoppel claim, plaintiff must show that defendant made statements intending that plaintiff would rely on them; that plaintiff did in fact rely on them, and as a result failed to commence an action within the prescribed period; and, finally, that defendant's statements were made prior to expiration of the appropriate limita-

tion period.[2] *Burr v. Trinity Medical Ctr.*, 492 N.W.2d 904, 908 (N.D.1992). We have said that "'the mere conduct of settlement negotiations or discussions by a defendant with a plaintiff does not alone provide a basis for estopping the defendant from pleading the statute of limitations.'" *Schmidt*, 460 N.W.2d at 130 (quoting Annotation, *Settlement Negotiations as Estopping Reliance on Statute of Limitations*, 39 A.L.R.3d 127, 131 (1971)). It is only when defendant's actions are calculated to induce plaintiff to believe that the claim will be settled without suit that negotiations may give rise to equitable estoppel. *Schmidt*, 460 N.W.2d at 130 (citing *Szarkowski v. Reliance Ins. Co.*, 404 N.W.2d 502, 507 (N.D.1987)). The Hubers failed to allege any facts that would move the instant case from mere discussions into the realm of actions calculated to induce the plaintiffs' forbearance. Therefore, we cannot say that the trial court erred when ruling there was no tolling of the statute.

## II. Denial of Hubers' Claim for Specific Performance

The Hubers also complain that they were improperly denied specific performance under the contract by the trial court. Specific performance would require the parties to perform their respective contractual promises. 71 Am.Jur.2d. *Specific Performance* § 211 (1973). The decision to grant the remedy of specific performance rests in the sound discretion of the trial court; we will not interfere unless we are shown the court's discretion was abused. *Harrington v. Harrington*, 365 N.W.2d 552, 558 (N.D. 1985); *Wolf v. Anderson*, 334 N.W.2d 212, 215 (N.D.1983). Specific performance is an equitable remedy, and as such, equitable principles must apply. *Wolf*, 334 N.W.2d at 215. The persons seeking specific performance carry the burden of proving they are so entitled. *Id.* Any complaint requesting specific performance must clearly show that legal damages are inadequate. *Id.*

The trial court concluded that Hubers have adequate remedies at law for dam-

ages. We agree. Hubers have failed to carry their burden of showing why monetary damages are inadequate in the instant case. In fact Mr. Huber, in his supplemental affidavit, has quantified his losses from the lack of irrigation over 17 years as $83,001. This only reinforces the trial court's conclusion that the Hubers have failed to support their claim for specific performance. We find the trial court did not abuse its discretion.

## III. Hubers' Reliance on the County's Request for Oral Argument

Hubers claim they were entitled to rely on the County's request for oral argument to guarantee them an opportunity to be heard on their own and the County's motions. We disagree.

Rule 3.2 of the North Dakota Rules of Court guarantees oral argument for parties who have timely served and filed their brief and request oral argument. *Anton v. Anton*, 442 N.W.2d 445, 446 (N.D.1989). The rule, however, requires that "[t]he party requesting oral argument must secure a time for the argument and serve notice upon all other parties." NDROC 3.2. Failure to secure a time for oral argument renders the request incomplete. The record in the instant case provides nothing to indicate that the County ever completed their initial request. If a request for oral argument is incomplete, reliance upon that initial request by another party is misplaced, at best. The Hubers, in their initial notice of motion, explicitly waived oral argument. Parties seeking oral argument under Rule 3.2 should make their own request, if they wish to be heard.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.

---

**2.** For a more comprehensive discussion of the general elements and theories encompassing equitable estoppel, see *Farmers Co-op. Assoc. of*

*Churchs Ferry v. Cole*, 239 N.W.2d 808 (N.D. 1976), and its progeny.