The DIOCESE OF BISMARCK TRUST and The Mary College, Inc. Trust, Plaintiffs and Appellees,

v.

RAMADA, INC., f/k/a Ramada Inns, Inc., a Delaware Corporation; Ramada Hotel Operating Company, a Corporation, Defendants and Appellees,

Raymond A. Lamb; William Wood; Dan Zinda; Michael Reek; William M. Shalhoob; and LWZ Hospitality, a North Dakota General Partnership, Defendants and Appellants.

The DIOCESE OF BISMARCK TRUST and The Mary College, Inc. Trust, Plaintiffs and Appellees,

v.

RAMADA, INC., f/k/a Ramada Inns, Inc., a Delaware Corporation; Ramada Hotel Operating Company, a Corporation, Defendants and Appellants,

Raymond A. Lamb; William Wood; Dan Zinda, Michael Reek; William M. Shalhoob; and LWZ Hospitality, a North Dakota General Partnership, Defendants and Appellees.

Civil Nos. 950375, 950380.

Supreme Court of North Dakota.

Sept. 10, 1996.

Lawrence R. Klemin (argued), of Bucklin, Klemin & McBride, Bismarck, for plaintiffs and appellees.

Charles S. Miller, Jr. (argued), of Fleck, Mather & Strutz, Bismarck, for defendants, appellees and appellants Ramada, Inc. and Ramada Hotel Operating Company.

Pamela J. Hermes (argued), of Vogel, Kelly, Knutson, Weir, Bye & Hunke, Ltd., Fargo, for defendants, appellants and appellees Raymond A. Lamb, William Wood, Dan Zinda, Michael Reek, William M. Shalhoob, and LWZ Hospitality.

MARING, Justice.

Raymond A. Lamb, William Wood, Michael Reek, Dan Zinda, William M. Shalhoob, and LWZ Hospitality, a general partnership, (collectively referred to as LWZ) appealed from a summary judgment granting the Diocese of Bismarck Trust and the Mary College Inc. Trust (Trusts) reformation of the rental clause in a ground lease. Ramada, Inc., formerly known as Ramada Inns, Inc., and Ramada Hotel Operating Co. (collectively referred to as Ramada) also separately appealed from the summary judgment. We affirm in part, reverse in part, and remand for further proceedings.

## I

In April 1972 the Trusts leased land for 75 years to Ramada Inns for a motel in Bismarck. The ground lease provided for a base minimum rent of $18,000 per year, plus a percentage of the net yearly receipts from the premises. In a provision that is at the center of this lawsuit, the lease also specified a maximum yearly rent with an adjustment multiplier tied to the consumer price index:

> "4-A 3. *Maximum Rental:* The Lessor shall not be entitled to any rental for

any 'percentage rental year' exceeding ... $40,000 per percentage rental year.

> "The Maximum rental shall be adjusted by the proportionate increase or decrease (if any) in the United States City Average Consumers Price Indes [sic] for all items as determined by the United States Department of Labor, Bureau of Labor Statistics, based on all items for the period 1967 equaling 100, which index figure for March, 1972, was *124.0.* Said adjusted *maximum rental* shall be arrived at by multiplying the said *Forty Thousand Dollars & no/100* by a fraction of which the numerator shall be the index figure for the month preceding the effective date of the exercise of this *Lease* and the denominator shall be *124.0.*"

The parties do not dispute that the Trusts and Ramada made a mutual mistake in reducing to writing their agreement on the adjustment multiplier.[1] The parties agree that the Trusts and Ramada intended adjustments to the maximum rent based upon changes in the consumer price index for each year of the lease. However, in the written agreement, the consumer price indices for both the numerator and the denominator of the adjustment multiplier resulted in a maximum rent of $40,000, with no yearly adjustments to the multiplier. The parties also agree that the Trusts and Ramada did not have actual knowledge of the mutual mistake in 1972.

In 1976, Ramada Inns assigned its interest in the motel and the ground lease to Ramada Hotel Operating Company. In July 1982, Ramada Hotel sold the motel and assigned its interest in the ground lease to LWZ, which then consisted of Lamb, Wood and Zinda. The net receipts from the premises were such that the rent did not exceed $40,-

---

1. The adjustment multiplier for the maximum rental clause was included in the lease as a result of negotiations between co-trustee Myron Atkinson and representatives from Ramada. The lease included an option for Ramada to purchase the property. Atkinson requested an adjustment multiplier for the option to purchase and subsequently requested an adjustment multiplier for the maximum rental clause. As a result, language for the adjustment multiplier for the option to purchase was inserted into the maximum

rental clause. When the lease was signed by the Trusts, the underscored yearly rent and consumer price index figures for the adjustment multiplier were not completed. When Ramada returned the final version of the lease to the Trusts, those figures were inserted into the clause. Also, the underscored words "maximum rental" were handwritten above the lined out words "purchase price" and the underscored word "Lease" was typed in where the word "option" had been deleted.

000 except for the lease year ending in May 1983 when the combined rent from Ramada and LWZ exceeded $40,000. According to the Trusts, they had no actual knowledge of the mistake in the rental clause until 1989 when the net receipts from the premises resulted in rent in excess of $40,000.

In 1993, the Trusts sued LWZ and Ramada to reform the maximum rental clause and to collect excess back rent from 1989 through 1993. LWZ and Ramada both denied liability and cross-claimed against each other for indemnity on the Trusts' claims. The district court granted summary judgment for the Trusts. The court ruled that the Trusts and Ramada made a mutual mistake when the lease was executed in 1972, because the rental clause did not reflect their agreement for yearly adjustments to the maximum rent. The court held that the Trusts' action for reformation and for excess back rent was timely under the twenty-year statute of limitations in N.D.C.C. § 28–01–05. The court further held that the Trusts' failure to read the lease or discover the mistake in 1972 did not bar reformation and that LWZ was not entitled to protection under N.D.C.C. § 32–04–17 as a good faith purchaser for value, because it had constructive notice of the mistake. The court reformed the lease to provide for an adjustment to maximum rent "arrived at by multiplying the said $40,000 by a fraction of which the numerator shall be the [consumer price] index figure for the month of March for each lease year during the term of this Lease and the denominator shall be 124.0." The court held Ramada and LWZ jointly and severally liable for excess back rent, interest, and costs and disbursements of $84,503.49 for the rental years 1989 through 1995.

Ramada and LWZ then moved for summary judgment on their cross-claims. The court concluded that reformation of the lease related back to Ramada's assignment to LWZ and therefore Ramada had not breached its warranties in the assignment. The court reiterated that LWZ was not a good faith purchaser, because it had constructive notice of the mistake at the time of the assignment and concluded that equitable principles precluded LWZ from claiming reli-

ance on Ramada's warranty. The court thus held that LWZ was liable for the excess back rent. LWZ and Ramada appealed from the final judgment.

## II

We review this appeal under our summary judgment standards. Summary judgment is a procedural method for promptly disposing of a lawsuit without a trial if, after viewing the evidence in the light most favorable to the party against whom it is sought and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or if only a question of law is involved. *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D.1996). *See* N.D.R.Civ.P. 56. Even if factual disputes exist, summary judgment is proper if the law is such that resolution of those factual disputes will not change the result. *Diegel*, 546 N.W.2d at 370.

## III

### A

We initially consider which statute of limitations applies to the Trusts' action to reform the ground lease on the basis of mutual mistake. Because the applicable statute of limitations for a reformation action depends upon the particular statute of each jurisdiction, no general limitation rule for a reformation action has developed. *See* Annot., *What Statute of Limitations Governs Action to Reform Instrument*, 36 A.L.R.2d 687 (1954); 66 Am.Jur.2d, *Reformation of Instruments* § 90 (1973).

The district court ruled that the twenty-year statute of limitations in N.D.C.C. § 28–01–05 applied to this action, because the Trusts sought excess back rent and reformation of the ground lease.

Section 28–01–05, N.D.C.C., provides:

*"Actions founded upon title to real estate or to rents or services therefrom—Limitations. No claim for relief, or defense, or counterclaim to an action founded upon the title to real property, or to rents or service out of the same, is effectual unless it appears that the person prosecuting the ac-*

tion or interposing the defense or counterclaim, or under whose title the action is prosecuted or the defense or counterclaim is made, or the ancestor, predecessor, or grantor of such person, was seized or possessed of the premises in question within twenty years before the committing of the act in respect to which such action is prosecuted or such defense or counterclaim is made."

In *Nash v. Northwest Land Co.*, 15 N.D. 566, 108 N.W. 792, 796 (1906), this court held that the predecessor to N.D.C.C. § 28–01–05 did not apply to an equitable claim for redemption against a mortgagee in possession. We observed that our statute was derived from New York, and we followed New York precedent[2] holding that equitable claims were not governed by the predecessor to N.D.C.C. § 28–01–05. 108 N.W. at 795–96. We held that the mortgagors' equitable right to redeem against a mortgagee in continuous possession for more than ten years was barred by the ten-year statute of limitations in the predecessor to N.D.C.C. § 28–01–22. *Nash*, 108 N.W. at 796.

▮ Reformation is an equitable remedy, *Ell v. Ell*, 295 N.W.2d 143, 153 (N.D. 1980). We hold N.D.C.C. § 28–01–05 is not applicable to the Trusts' equitable claim for reformation. Although the Trusts' claim for excess back rent is arguably a claim for "rents" which is "founded upon the title to real property" within the meaning of N.D.C.C. § 28–01–05, the determination of which statute of limitations governs a particular action depends on the actual nature of the subject matter of the case. *Johnson v. Haugland*, 303 N.W.2d 533, 538 (N.D.1981). *See* 54 C.J.S., *Limitations of Actions* § 32 (1987).

In *Johnson*, we considered whether the six-year statute of limitations in N.D.C.C. § 28–01–16, or the two-year statute of limitations for malpractice in N.D.C.C. § 28–01–18(3) governed an action against attorneys for negligent conduct in representing a client. We concluded that the actual nature of the case was professional malpractice,

which was governed by the specific statute of limitations for malpractice in N.D.C.C. § 28–01–18(3). *Johnson*, 303 N.W.2d at 538–39. Because we concluded the specific malpractice statute controlled and prevailed over the general, we declined to follow the rule of construction that the longer statute of limitations applies if there is a question about which governs an action.[3] *Johnson*, 303 N.W.2d at 539.

Here, the viability of the Trusts' claim for excess back rent depends upon reformation of the lease. No claim for excess back rent could arise until the lease is reformed, and if the lease cannot be reformed, the Trusts are not entitled to excess back rent. *See Black v. Mill Road Assocs.*, 86 A.D.2d 621, 446 N.Y.S.2d 363, 364 (1982) (action for money damages barred because it depended on viability of barred action for reformation of lease). We conclude that the actual nature and substance of the Trusts' action is for reformation of the ground lease. We, therefore, hold that the district court erred in applying the twenty-year statute of limitations in N.D.C.C. § 28–01–05 to the Trusts' equitable action for reformation.

## B

▮ LWZ and Ramada argue that the statute of limitations for the Trusts' reformation action is either six years under N.D.C.C. § 28–01–16(1), or ten years under N.D.C.C. §§ 28–01–15(2) or 28–01–22.

Section 28–01–16(1), N.D.C.C., provides a six-year statute of limitations for "[a]n action upon a contract, obligation, or liability, express or implied, subject to the provisions of sections 28–01–15 and 41–02–104." Section 28–01–15(2), N.D.C.C., provides a ten-year statute of limitations for "[a]n action upon a contract contained in any conveyance or mortgage of or instrument affecting the title to real property." Section 28–01–22, N.D.C.C., says "[a]n action for relief not otherwise provided for must be commenced within ten years after the claim for relief has accrued."

---

**2.** *Miner v. Beekman,* 50 N.Y. 337 (1872); *Hubbell v. Sibley,* 50 N.Y. 468 (1872).

**3.** *See Interest of W.M.V.,* 268 N.W.2d 781 (N.D. 1978).

In *Ell*, 295 N.W.2d at 151, we discussed, but did not decide, whether the six-year limitation in N.D.C.C. § 28–01–16(1), or the ten-year limitation in N.D.C.C. § 28–01–15(2) governed an action for reformation of a deed on the ground of mutual mistake. *See also Wehner v. Schroeder*, 335 N.W.2d 563, 567 (N.D.1983) (holding that action to reform deed on the basis of mistake, which accrued in 1978 and was commenced in 1981, was not barred under either N.D.C.C. §§ 28–01–15(2) or 28–01–16(1)).

The plain language of both N.D.C.C. §§ 28–01–15(2) and 28–01–16(1) applies to "[a]n action upon a contract." However, the six-year limitation in N.D.C.C. § 28–01–16(1), is explicitly "subject to the provisions of section[ ] 28–01–15." Section 28–01–15(2), N.D.C.C., specifically provides a ten-year statute of limitations for an action based upon "a contract contained in any conveyance or ... instrument affecting the title to real property." Under our rules of statutory construction, a specific statute controls a general statute. N.D.C.C. § 1–02–07; *Johnson*, 303 N.W.2d at 538–39. The ten-year limitation for "[a]n action upon a contract contained in any ... instrument affecting the title to real property" in N.D.C.C. § 28–01–15(2) is more specific than the general six-year limitation for "[a]n action upon a contract" in N.D.C.C. § 28–01–16(1).[4]

Under N.D.C.C. § 47–16–01, a real property lease is "a contract by which one gives to another the temporary possession and use of real property for reward and the latter agrees to return such possession to the former at a future time." A real property lease is generally considered a contract and a conveyance of an interest in land. *See Signal Management Corp. v. Lamb*, 541 N.W.2d 449, 452–53 (N.D.1995); *Petroleum Exchange v. Poynter*, 64 N.W.2d 718, 722 (N.D. 1954); 49 Am.Jur.2d, *Landlord and Tenant*

§ 20 (1995). This written lease conveys a leasehold interest from the Trusts to the original lessee, Ramada, and to Ramada's subsequent assignees, including LWZ. The lease thus decreases the Trusts' bundle of real property rights and conveys certain rights in the land to the lessees. We conclude this written lease is a contractual agreement in a conveyance or instrument affecting title to real property within the meaning of N.D.C.C. § 28–01–15(2). *See Huber v. Oliver County*, 529 N.W.2d 179, 181–82 (N.D.1995) (trial court did not err in applying N.D.C.C. § 28–01–15(2) to action upon contract granting easement in land). We hold that the ten-year limitation under N.D.C.C. § 28–01–15(2) applies to the Trusts' action for reformation of the ground lease on the basis of mutual mistake.[5]

### C

Under N.D.C.C. § 28–01–15(2), the Trusts' reformation action is barred if it accrued more than ten years before it was commenced in 1993. A reformation action based upon mutual mistake accrues when the facts which constitute the mistake have been, or in the exercise of reasonable diligence should have been, discovered by the party seeking relief. *Ell*, 295 N.W.2d at 151. The question of when a party acquires, or in the exercise of reasonable diligence should have acquired, knowledge of a mutual mistake is generally a question of fact which is not appropriate for summary judgment. *Jacob v. Hokanson*, 300 N.W.2d 852, 856 (N.D. 1980).

LWZ and Ramada argue that the Trusts' reformation action accrued either in 1972 when the lease was executed and returned to the Trusts with changes in the maximum rental clause, or in 1981 when notations to records in the Trusts' possession

---

4. In *Schmidt v. Grand Forks Country Club*, 460 N.W.2d 125, 128 (N.D.1990), we said that an action for rescission of a contract to purchase real property was subject to the six-year statute of limitations in N.D.C.C. § 28–01–16(1). However, in *Schmidt* the parties did not raise an issue about which statute of limitations applied to that rescission action. Instead, the dispositive issue involved when the claim for relief accrued.

5. The six-year statute of limitations in N.D.C.C. § 28–01–16(6), specifically refers to actions based upon fraud. Other jurisdictions have separate provisions for actions based upon fraud and mistake. *See* N.Y.Civ.Prac. L. & R. § 213(6) and (8). However, N.D.C.C. § 28–01–16 does not include a separate provision for actions based upon mistake.

showed that an agent for the Trusts had unsuccessfully attempted to calculate rent under the maximum rental clause. They argue a genuine issue of material fact exists as to whether the Trusts knew, or should have known, about the mistake in 1972 and in 1981. The Trusts respond that their reformation action did not accrue until they discovered the mistake in 1989.

Viewing the evidence in the light most favorable to Ramada and LWZ, there are genuine issues of material fact about when the Trusts should have known about the mistake. When Ramada returned the final version of the lease to the Trusts in 1972, there were handwritten changes in the rental clause. *See* fn. 1, *supra*. Although a reformation action does not necessarily accrue when a document is executed, *Ell*, 295 N.W.2d at 151, we believe the circumstances of those changes raise a genuine issue of material fact about whether the Trusts, in the exercise of reasonable diligence, should have discovered the mistake when the lease was returned to it in 1972.

Additionally, ledger sheets in the possession of the Trusts indicate that, in 1981, someone for the Trusts made calculations regarding the maximum rent. Although the Trusts argue the identity of the person who made those notations is unknown and that unknown person was not in a position of responsibility regarding the lease, we believe those ledger sheets also raise inferences about whether the Trusts, in the exercise of reasonable diligence, should have known about the mistake in 1981.

We reverse the summary judgment on the statute of limitations and remand for a factual determination on the issue of when the Trusts knew, or in the exercise of reasonable diligence should have known, about the mistake.

### D

▮ Ramada also argues that laches precludes the Trusts from bringing this reformation action more than twenty years after the mistake was made.

▮ Laches does not arise from the passage of time alone, but is a delay in enforcing one's right which is prejudicial to another. *Schmidt v. Schmidt*, 540 N.W.2d 605, 608 (N.D.1995); *Wehner v. Schroeder*, 354 N.W.2d 674, 676 (N.D.1984). In addition to the passage of time, parties against whom a claim of laches is sought to be invoked must be actually or presumptively aware of their rights and must fail to assert those rights against parties who in good faith changed their position and cannot be restored to their former state. *Wehner*, 354 N.W.2d at 676. In an action to reform an instrument on the ground of mistake, laches generally does not begin to run until the mistake has been, or ought to have been, discovered. *Id.* Laches is generally a question of fact. *Williams County Social Services Bd. v. Falcon*, 367 N.W.2d 170, 174 (N.D.1985).

Because we have concluded there are genuine issues of material fact about when the Trusts knew, or in the exercise of reasonable diligence, should have known about the mistake, we also conclude there are genuine issues of material fact about whether the Trusts' action is precluded by laches. *See Wehner v. Schroeder*, 354 N.W.2d at 677 (affirming trial court finding that parties suffered no prejudice in three years between accrual and commencement of action). We remand for a factual determination on whether the Trusts' action is barred by laches.

### IV

### A

▮ LWZ argues that it acquired its rights in the lease in good faith and is, therefore, entitled to protection from reformation under N.D.C.C. § 32–04–17. Ramada and the Trusts respond that, as a matter of law, LWZ did not acquire its rights in the lease in good faith, because it had constructive notice of the mutual mistake when Ramada assigned the lease to LWZ in 1982.

Section 32–04–17, N.D.C.C., provides for the equitable remedy of reformation:

"*Revision of contract for fraud or mistake.*—When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not tru-

ly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value."

The district court concluded:

"Both [Lamb and Zinda] are experienced in these kind of business affairs and understood the reason for CPI adjustment clause. Having read the lease they had actual notice of the clause and its very apparent ineffective effects on the rents. These are circumstances sufficient to put a prudent person upon inquiry to determine why such a lengthy clause in a long term lease failed to result in a CPI formula having some meaning. Reasonable diligence required an inquiry and having failed to exercise that diligence [LWZ is] deemed to have constructive notice of the mistake of fact and [is] not protected as purchasers in good faith."

■ Good faith is defined as "an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." N.D.C.C. § 1–01–21. Under N.D.C.C. § 32–04–17, a good faith purchaser must acquire rights without actual or constructive notice of another's rights. *Wehner v. Schroeder,* 335 N.W.2d 563, 565 (N.D. 1983); *Ell,* 295 N.W.2d at 145. Actual notice consists of express information of a fact, N.D.C.C. § 1–01–23, while constructive notice is notice imputed by law to a person having no actual notice. N.D.C.C. § 1–01–24.

■ Under N.D.C.C. § 1–01–25, a person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact and who omits to make an inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself. *Nygaard v. Robinson,* 341 N.W.2d 349, 355–56 (N.D.1983); *Earth Builders, Inc. v. State,* 325 N.W.2d 258, 259 (N.D.1982); *Burlington Northern, Inc. v. Hall,* 322 N.W.2d 233, 242 (N.D.1982). The issues of good faith and constructive notice are similar in that they both require an examination of the information possessed by a person. *Nygaard,* 341 N.W.2d at 355. The information, however, need not be so detailed as to communicate a complete description of an opposing interest; instead, the information must be sufficient to assert the existence of an interest as a fact, which in turn gives rise to a duty to investigate. *Id.* at 356. In making inquiry, a person must exercise reasonable diligence; a superficial inquiry is not enough. *Id.*

■ A party's status as a good faith purchaser without notice of a competing interest is a mixed question of fact and law. *Poyzer v. Amenia Seed· and Grain Co.,* 381 N.W.2d 192, 196 (N.D.1986); *Nygaard,* 341 N.W.2d at 354; *Earth Builders,* 325 N.W.2d at 259. The factual circumstances relating to events surrounding the transaction—the realities disclosed by the evidence as distinguished from their legal effect—constitute the findings of fact necessary to determine whether a party has attained the status of a good faith purchaser without notice. *Nygaard,* 341 N.W.2d at 354. A court's ultimate determination that a party is not a good faith purchaser for value is a conclusion of law, because that determination describes the legal effect of the underlying factual circumstances. *Id.*

Lamb and Zinda, two of the partners in LWZ in 1982, acknowledged reading the maximum rental clause when the lease was assigned in 1982. Under N.D.C.C. §§ 45–06–03 and 45–06–04, their knowledge is imputed to the partnership. Lamb testified in his deposition that the maximum rental clause was "gibberish" and "meaningless." Zinda testified in his deposition that he understood the clause to impose a $40,000 per year ceiling for maximum rent.

LWZ now claims that because the lease defined "effective date" as the date on which Ramada gave notice of suitability to the Trusts and also defined the suitability period as a sixty-day period commencing upon mutual execution of the lease, LWZ interpreted the maximum rental clause to mean that the adjustment multiplier could have changed slightly from March 1972 until the "effective date" of the lease. LWZ thus argues that its

interpretation establishes a possible purpose and meaning for the clause.

Viewing the circumstances surrounding the assignment of the lease and LWZ's interpretation of the rental clause in the light most favorable to LWZ, we believe a factual dispute exists as to whether LWZ had notice of facts which would provoke a prudent person to make further inquiry about its rent obligation under the ground lease. We hold that the district court erred in concluding, as a matter of law, that LWZ had constructive notice of the mutual mistake and, therefore, was not a good faith purchaser. We reverse the district court's decision that the Trusts were entitled to reformation under N.D.C.C. § 32–04–17, and we remand for a factual determination on the issue of whether LWZ was a good faith purchaser.

### B

LWZ also claims that the Trusts' failure to read the maximum rental clause when the lease was executed precludes the Trusts from seeking reformation of the lease.

Generally, a party has a legal obligation to know the contents of a contract before signing it. *Rink v. NPN, Inc.,* 419 N.W.2d 194, 195 (N.D.1988); *Security State Bank of Wishek v. State,* 181 N.W.2d 225, 233 (N.D.1970); *Hanes v. Mitchell,* 78 N.D. 341, 49 N.W.2d 606, 609–610 (1951). *See* N.D.C.C. § 9–03–13 ("[m]istake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake.") Reformation may be inappropriate if a mistake was caused by a party's failure to read a contract. *Rink,* 419 N.W.2d at 195.

Under Restatement (Second) of Contracts, §§ 155 and 157, (1981)[6] if parties make a mistake in reducing a prior agreement to writing, a party's negligent failure to read the subsequent written agreement does not preclude reformation unless the rights of good faith purchasers for value are unfairly affected. Comment b of § 157 explains:

> "The exceptional rule stated in the present Section with regard to reformation has no application to the common case in which the term in question was not the subject of prior negotiations. It only affects cases that come within the scope of § 155, under which there must have been an agreement that preceded the writing. In such a case, a party's negligence in failing to read the writing does not preclude reformation if the writing does not correctly express the prior agreement.... Where there was no prior agreement, however, this Section does not apply because reformation is not available under § 155."

Sections 32–04–17 and 9–03–13, N.D.C.C., follow those reformation principles. *Wehner v. Schroeder,* 354 N.W.2d 674, 679 (N.D.1984) (applying comment b of Restatement (Second) of Contracts § 157 in action affirming reformation for mistake in reducing prior agreement to writing); *see Ell,* 295 N.W.2d at 145, 152 (reformation allowed for mistake in reducing prior agreement to writing). *Compare Rink,* 419 N.W.2d at 194–195 (no evidence about mutual mistake in reducing prior agreement to writing); *Bank of Wishek,* 181 N.W.2d at 226–227 (same); *Hanes,* 49 N.W.2d at 610 (in action seeking damages and not rescission or reformation of contract, evidence of prior oral agreement which directly contradicted express words of written contract was properly excluded under parol evidence rule). In *Wehner,* 354 N.W.2d at

**6.** Section 155, Restatement Second of Contracts, says:

"When Mistake of Both Parties as to Written Expression Justifies Reformation
"Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected."

Section 157, Restatement Second of Contracts, says:

"Effect of Fault of Party Seeking Relief
"A mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation under the rules stated in this Chapter, unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing."

679, citing Restatement (Second) of Contracts § 157, we said that in order to bar reformation, the fault of the party requesting relief must amount " 'to a failure to act in good faith and in accordance with reasonable standards of fair dealing.' " We affirmed a trial court's finding of "no evidence that the [party who did not read a deed] failed to act in good faith or in accordance with reasonable standards of fair dealing." *Wehner*, 354 N.W.2d at 679.

Here, LWZ does not dispute the Trusts and Ramada made a mutual mistake in reducing their prior agreement to writing. Viewing the evidence in the light most favorable to LWZ, we cannot say, as a matter of law, that the Trusts' failure to read the lease was in good faith and in accordance with reasonable standards of fair dealing. We conclude summary judgment was inappropriate on this issue, and we also remand for a factual determination on this issue.[7]

### V

▮▮▮ LWZ contends the district court erred in granting Ramada summary judgment on the cross-claims for indemnity. LWZ argues that Ramada breached its warranty in the 1982 assignment to LWZ.[8]

The district court ruled that Ramada did not breach its warranty because reformation of the lease related back to the date of the assignment. The court said that LWZ was not a good faith purchaser because it took with knowledge of the mistake at the time of the assignment. Because LWZ had constructive notice of the mistake, the court concluded equitable principles precluded LWZ from ignoring the mistake and relying on Ramada's warranty.

---

7. As previously discussed, the effect of the Trusts' failure to read the final lease when it was returned by Ramada also relates to the factual issues involved with the statute of limitations.

8. The purchase agreement between Ramada and LWZ says:

"*Warranties of SELLER*
"SELLER hereby represents and warrants to BUYER that:

    \*    \*    \*    \*    \*    \*

"(b) The lease covering the premises is in full force and effect, without default, and the

▮▮▮ The general rule is that, except as to innocent parties who acquire rights without notice, reformation of an instrument relates back to and takes effect from the time of original execution of the instrument. *M.T. Straight's Trust v. Comm. of Internal Revenue*, 245 F.2d 327, 329 (8th Cir.1957); *California Cas. Ins. v. State Farm Mut.*, 185 Ariz. 165, 913 P.2d 505, 510 (Ct.App.1996); *L.E. Myers Co. v. Harbor Ins. Co.*, 67 Ill. App.3d 496, 24 Ill.Dec. 182, 384 N.E.2d 1340, 1345 (1978); *Gurske v. Strate*, 165 Neb. 882, 87 N.W.2d 703, 705 (1958); *Katzenberger v. State*, 735 P.2d 405, 408 (Utah.Ct.App.1987). *See* 66 Am.Jur.2d, *Reformation of Instruments* § 11 (1973).

On remand, if the Trusts are successful in reforming the lease, the reformation relates back to and takes effect from the time of the original execution of the lease. Under those circumstances, we agree with the district court that LWZ would be precluded from ignoring the mistake and relying on Ramada's warranty.

### VI

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

I agree with the majority that the twenty-year statute of limitations in section 28–01–05, NDCC, is not applicable. I am less convinced that the ten-year statute in section 28–01–15(2), NDCC, applies rather than the six-year statute in section 28–01–16(1),

---

copy thereof delivered to BUYER, together with all amendments and modifications, contains all of the terms, agreements and provisions relating to the leasing and rental of the property."

NDCC. As the majority notes, "the determination of which statute of limitations governs a particular action depends on the actual nature of the subject matter of the case."

Here, the issue revolves around the clause providing for excess rent. It has little or nothing to do with the actual conveyance (lease) of the property. In *Signal Management Corp. v. Lamb*, 541 N.W.2d 449 (N.D. 1995), we observed that under the common law view of a lease as a conveyance, if the landlord elected to accept the surrender of the premises upon abandonment by the lessee, the lease was terminated and there was no continuing obligation for rent. Alternatively, the landlord could decline to accept the offer of surrender implicit in an abandonment and continue to hold the tenant liable for rent as it came due. We recognized this common law approach was the subject of sharp criticism and observed that the "dual nature of a lease as both a contract and a conveyance of an interest in land has important implications for resolving disputes between landlords and tenants," *Signal Management Corp. v. Lamb*, 541 N.W.2d at 452, and held that because the law of leases is a blend of property concepts and contractual doctrines, the concept of mitigation of damages must be considered in determining whether a landlord accepted a surrender of the lease by reletting the property after it was abandoned by the tenant.

It seems to me that similar principles apply here, i.e., that the subject matter of the dispute is a contractual dispute rather than one of the conveyance (lease) itself, and that the six-year statute of limitations applicable to contracts better fits this action. Cases such as *Schmidt v. Grand Forks Country Club*, 460 N.W.2d 125 (N.D.1990), in which the dispute was an action for rescission based on failure of consideration, tacitly recognize the nature of the subject matter of the case as more of a basic contract dispute rather than one involving a dispute over the title to real property.

Because it is not necessary, for purposes of the issues before us, to decide that issue now, I do not join that part of the majority opinion

(III A) holding the ten-year statute applies. However, I concur in the result.